IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

LONNIE KADE WELSH,  §
Institutional ID No. 6516607,  §
　　　　　　　　　　　　　　 §
　　　　Plaintiff,  §
　　　　　　　　　　　　　　 §
v.  §  CIVIL ACTION NO. 5:18-CV-020-BQ
　　　　　　　　　　　　　　 §
CORRECT CARE RECOVERY  §
SOLUTIONS, *et al.*,  §
　　　　　　　　　　　　　　 §
　　　　Defendants.  §

## REPORT AND RECOMMENDATION[1]

Pro se Plaintiff Lonnie Kade Welsh, a sexually violent predator civilly committed to the custody of the Texas Civil Commitment Center (TCCC) in Littlefield, Texas, alleges that Defendant Littlefield Police Department Chief of Police Ross Hester conspired with TCCC Security Director Christopher Woods to bring false charges against him. Am. Compl. 65, ECF No. 20.[2] Hester now moves for summary judgment on the issue of qualified immunity, asserting that Welsh has failed to demonstrate (1) Hester violated his constitutional rights and (2) that Hester's actions were objectively unreasonable in light of clearly established law. ECF Nos. 173, 174, 175, 176. Welsh filed a response (ECF Nos. 180, 181), to which Hester submitted his reply. ECF No. 188. In addition, Welsh seeks leave to file supplemental summary judgment evidence (ECF No. 182) and has also filed a Sur-Reply (ECF No. 189), in response to which Hester filed a Motion to Strike. ECF No. 190.

---

[1] The Honorable Sam R. Cummings, Senior United States District Judge, transferred this case to the undersigned for pretrial management. *See* ECF Nos. 13, 166. Not all parties have consented to proceed before the magistrate judge.

[2] Page citations to Welsh's Amended Complaint refers to the electronic page number assigned by the Court's electronic filing system.

For the reasons stated herein, the undersigned recommends that the United States District Judge **DENY** Welsh's request to file supplemental evidence and **GRANT** Hester's Motion to Strike Welsh's Sur-Reply. The undersigned further recommends that the district judge **GRANT** Hester's Motion for Summary Judgment.

## I.    Background and Pleadings[3]

### A.  Procedural History

Proceeding pro se and *in forma pauperis*, Welsh filed this 42 U.S.C. § 1983 action, alleging multiple claims against thirty-five Defendants in thirteen specific counts, plus additional "miscellaneous claims." *See* ECF No. 20. In Count 11 of his Amended Complaint, Welsh alleges, *inter alia*, that Defendants Hester and Woods conspired to violate his constitutional rights in connection with a November 13, 2017, use of force incident at the TCCC. Am. Compl. 65. According to Welsh, Hester investigated the November 13 incident and thereafter charged Welsh "with fabricating physical evidence by assaulting his own face and making a false report to a Peace Officer."[4] *Id.* Welsh alleges that Defendants Hester and Woods conspired "to press false charges against [him]." *Id.*

On April 24, 2019, the Court entered an Order of Dismissal and Judgment dismissing Welsh's Amended Complaint and all claims therein. ECF Nos. 43, 44. Specifically, the Court dismissed Count 11 as barred under *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) based on Welsh's state court conviction for fabricating evidence in violation of Texas Penal Code § 37.09. During the pendency of Welsh's post-judgment motions and appeal in this case, however, the

---

[3] In previous orders the Court has discussed extensively the procedural history of this case. *See, e.g.,* ECF Nos. 81, 157. The Court therefore only highlights facts relevant to Hester's motion.

[4] I.e., two separate offenses—Tex. Penal Code §§ 37.08 (False Report to Peace Officer), 37.09 (Tampering With or Fabricating Physical Evidence).

Seventh Court of Appeals of Texas reversed Welsh's conviction. *Welsh v. State of Texas*, 570 S.W.3d 963, 968 (Tex. App.—Amarillo 2019, pet. denied).

The Texas Court of Appeals only considered whether the evidence at trial was sufficient to support Welsh's conviction under § 37.09. *Id.* at 965. The court reviewed opinions from the Second and Eleventh Texas Courts of Appeals and concluded "that the conveyance of knowingly false *information* about the cause of real injuries is not a violation of section 37.09(a)(2)." *Id.* at 967 (emphasis added). That is, the court determined that Welsh conveyed "false information" but did not make, present, or use *physical* evidence to affect an investigation in violation of § 37.09. *Id.* The court reasoned that Welsh's "injuries, assuming they are to be considered a 'thing,' [were] undisputedly real. What [was] false [was] [Welsh's] allegation that the [TCCC] staff caused those injuries by assaulting him." *Id.* Therefore, sufficient evidence did not support the jury's guilty finding under § 37.09 and, without a lesser-included offense, the court was required to "issue a judgment of acquittal." *Id.* at 968.

The Texas Court of Appeals' acquittal thereby required reversal by the Fifth Circuit Court of Appeals of this Court's *Heck* dismissal of the Count 11 conspiracy claim and its reinstatement. *See Welsh v. Correct Care Recovery Sols.*, 845 F. App'x 311, 321 (5th Cir. 2021). On remand, this Court ordered Defendants Hester and Woods to answer in connection with Welsh's conspiracy allegations. ECF Nos. 81, 86. The United States Marshal (USM) served Defendant Hester, and he timely answered.[5]  ECF Nos. 95, 103. Defendant Hester raised the affirmative defense of qualified immunity in his Answer (ECF No. 103) and thereafter filed the instant Motion for Summary Judgment. ECF No. 173.

---

[5] The USM was unable to serve Defendant Woods and he has since been dismissed from this action. *See* ECF Nos. 92, 116, 148, 160.

### B. Parties' Arguments

Through his Brief in Support of the Motion, Defendant Hester argues he is entitled to qualified immunity because: (1) he had probable cause to arrest Welsh based on charges arising from the November 13 incident; (2) the independent-intermediary doctrine bars Welsh's claim; (3) Welsh has not set forth sufficient evidence demonstrating a conspiracy existed; and (4) Hester did not act unreasonably in light of clearly established law. *See* Defs.' Br. in Supp. 15–19, ECF No. 174 [hereinafter Def.'s Br.].

Welsh, on the other hand, maintains that Hester lacked probable cause to initiate charges against him. Pl.'s Resp. 11, ECF No. 180.[6]  Moreover, Welsh argues that despite the state magistrate's and grand jury's findings of probable cause, the independent-intermediary doctrine does not bar his claim against Hester. *Id.* at 9. Specifically, Welsh asserts that Hester tainted the intermediary's decisions in violation of *Malley v. Briggs*, 475 U.S. 335 (1986) and *Franks v. Delaware*, 438 U.S. 154 (1978). *See id.* at 9, 15–23. Welsh further alleges, without citing a specific portion of his Amended Complaint, that he has "plead[ed] that Hester committed perjury at trial, [and] that [Hester] manufactured a felony to over charge Welsh of a crime he was incapable in law of committing." *Id.* at 23. These actions, Welsh avers, violated his Fourteenth Amendment rights. *See id.* at 23–26.

As to the foregoing, Welsh largely focuses on legal argument, tracking the elements of § 37.09. First, Welsh asserts that he "could not have been considered to have presented a record, document or thing by 'mak[ing] and present[ing] physical evidence' of injuries to himself to

---

[6]  Welsh attempted to consecutively paginate his responsive motion and brief in support, as well as his appendix, but the pagination appears off in that some of the pages are not numbered, and there appear to be errors in the numbering. *See* ECF No. 180, at 5, 22; Pl.'s App. 599–601, 634–38, ECF No. 181. As such, page citations to Welsh's Response and Opposition to Defendants [sic] Motion for Summary Judgment, along with the appendix in support, refer to the electronic page number assigned by the Court's electronic filing system.

comply with the requirements of Texas Penal code 37.09"—i.e., the holding of the Texas Court of Appeals. *Id.* at 16; *see id.* at 24 ("Hester had no reasonable belief that Welsh could legally be considered a thing."). Second, Welsh contends that Hester never specified "how Welsh used the evidence[, e.g., the physical injuries,] during the pending or in progress investigation to influence the investigation itself." *Id.* at 18; *see id.* at 22 (asserting that Hester did not "have any evidence that Welsh actually tried to affect the course of his investigation"), 24 (alleging that "Hester had no reasonable belief . . . how a private corporation non-criminal investigation[, e.g., the TCCC disciplinary investigation,] could violate the Penal Code 37.09"). Finally, Welsh maintains that Hester's criminal investigation was not "pending or in progress" when Welsh allegedly fabricated evidence. *See id.* at 18–19, 21.

In addition, Welsh contends that in two separate cases he moved to recuse the state court trial judge, the Honorable Felix Klein of the 154th District Court, alleging that the judge was biased. *Id.* at 26. According to Welsh, an administrative judge "reviewed the facts in one case and found Judge Klein to be biased," and "Judge Kline [sic] recused himself . . . in the other case, admitting that he was biased." *Id.* Welsh believes this information is relevant because "the entire case, its factually [sic] history was tainted . . . by the biasness of the sitting Judge Klein." *Id.* at 27. Welsh also posits that his acquittal by the Texas Court of Appeals "is important because" it demonstrates that the state's case was so lacking that it should not have been submitted to a jury. *Id.* (quoting *Burks v. United States*, 437 U.S. 1, 16 (1978)).

As to his civil conspiracy claim, in Welsh's view the summary judgment evidence shows "that the whole meeting between Welsh and Hester was set up by Hester and Woods, for Welsh to use the alleged self-inflicted injuries to press the charge [sic] under Penal Code 37.09." *Id.* at 28. Welsh asserts that "Hester purposely misstated [TCCC resident Randy] Carr's witness statement," "Woods made the video camera footage disappear that was in front of Welsh's cell," and "Hester

never inquired about the footage." *Id.* Welsh concludes his briefing by asserting that the evidence shows TCCC staff members assaulted him on November 13, 2017, causing Welsh physical injuries. *Id.* at 29–30.

In reply, Hester initially raises several evidentiary challenges. Def.'s Reply 10, ECF No. 188. He objects to Welsh's Exhibit F (a statement by TCCC resident John Alexander), arguing that it constitutes inadmissible hearsay. *Id.* Hester also maintains that supplemental evidence belatedly submitted by Welsh should not be considered because Welsh did not obtain leave to file it. *Id.*; *see* ECF No. 182. Further, Hester objects to Welsh's *Malley* and *Franks* allegations as untimely. Def.'s Reply 7.

Turning to the merits, Hester argues that Welsh's ostensible failure to brief whether Hester had probable cause to arrest Welsh for a violation of § 37.08 (False Report to a Peace Officer) (i.e., the second charged offense) renders Welsh's argument waived. *Id.* at 2–3. Moreover, Hester avers that the summary judgment evidence Welsh submitted (primarily state criminal trial transcripts) support Hester's summary judgment motion. *Id.* at 2; *see id.* at 4–6 (reviewing Welsh's summary judgment evidence that Hester believes supports the conclusion that he had probable cause to initiate criminal charges against Welsh). Finally, notwithstanding his objection to Welsh's *Malley* and *Franks* arguments, Hester maintains that Welsh has not demonstrated a violation of either doctrine. *Id.* at 7–9.

## II.    Summary Judgment Standard and Qualified Immunity

Where the pleadings and evidence show that no genuine issue of material fact exists, the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* The movant "bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the non-movant bears the burden of proving such material facts at trial, movants may satisfy their burden by either affirmatively showing the nonmovant's inability to establish such material facts or "merely demonstrat[ing] an absence of evidentiary support in the record for the non-movant's case." *Wesley v. Gen. Drivers, Warehousemen & Helpers Loc. 745*, 660 F.3d 211, 213 (5th Cir. 2011) (quoting *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010)); *accord Ramirez ex rel. Ramirez v. Escajeda*, No. EP-17-CV-00193-DCG, 2021 WL 3713064, at *3 (W.D. Tex. Aug. 20, 2021).

A defendant's good-faith assertion of qualified immunity, however, alters the usual summary judgment burden of proof, "shifting it to the plaintiff to show that the defense is not available." *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016) (citations omitted); *accord Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (holding that in summary judgment context, government official "need only plead qualified immunity, which then shifts the burden to the plaintiff"). To satisfy this burden, the plaintiff need not present "absolute proof," but must offer more than unsupported allegations. *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (citing *King*, 821 F.3d at 654). Specifically, the plaintiff—as the nonmoving party—must identify evidence in the record and show how it presents a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324; *Renfroe v. Parker*, 974 F.3d 594, 599–600 (5th Cir. 2020).

In considering a summary judgment motion, courts must view all facts and inferences in the light most favorable to the plaintiff and resolve any disputed material facts in his favor. *Anderson*, 477 U.S. at 255; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). Nevertheless, "a [plaintiff] cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med.*

*Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). A plaintiff "must allege facts specifically focusing on the conduct of [the defendant] which caused his injury." *Wicks v. Miss. State Emp. Servs.*, 41 F.3d 991, 995 (5th Cir. 1995). Moreover, where video evidence is available, the court may ignore a party's version of the facts when that version is "blatantly contradicted by the record," so that no reasonable jury could believe it. *Tucker v. City of Shreveport*, 998 F.3d 165, 170 (5th Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *see Renfroe*, 974 F.3d at 599–600 (relying on the "unrebutted testimony . . . supported by [dash camera] video" to establish a record even where plaintiff claimed a genuine issue of material fact). "[A]lthough courts view evidence in the light most favorable to the nonmoving party, they give greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016); *accord Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) ("[W]hile viewing the evidence favorably to the nonmovant, we assign greater weight, even at the summary judgment stage, to the video recording taken at the scene." (internal quotation marks, alterations, and citation omitted)). Importantly, this Court must not make credibility determinations or weigh evidence in ruling on such a motion. *Anderson*, 477 U.S. at 254–55.

Qualified immunity protects government officials performing discretionary functions from civil liability to the extent "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In deciding whether a defendant is entitled to qualified immunity, courts conduct a two-prong inquiry. Under the first prong, a court must decide whether the facts alleged, taken in the light most favorable to the plaintiff, show the officer's conduct violated a federal constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson*, 555 U.S. at 236; *see Solis v. Serrett*, 31

F.4th 975, 981 (5th Cir. 2022) (quoting *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019))
(describing the two-part inquiry). Under the second prong, a court must determine whether the
constitutional right in question was clearly established at the time of the alleged misconduct.
*Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is
clearly established is whether it would be clear to a reasonable officer that his conduct was
unlawful in the situation he confronted." *Id.* at 202. A court may address either prong first in light
of the circumstances particular to the case. *Pearson*, 555 U.S. at 236; *see Solis*, 31 F.4th at 981
("The court need not decide the first question before the second, and it may decide the case solely
on the basis that the right was not clearly established.").

### III.  Factual Evidence Before the Court

#### A.  What material should the Court consider as proper summary judgment evidence?

Hester and Welsh each filed appendices in conjunction with their Motion and Response,
respectively. ECF Nos. 175, 181. Welsh also filed a motion for leave to file supplemental
evidence (ECF No. 182),[7] as well as a Sur-Reply. ECF No. 189. Hester objects to both. Def.'s
Reply 10 (observing that Welsh "submitted supplemental evidence untimely and did not obtain
leave to do so" and arguing the Court should not consider it); Def. Ross Hester's Mot. & Br. to
Strike Pl.'s Sur-Reply 1–2, ECF No. 190 [hereinafter Def.'s Mot. to Strike].

#### 1.  Appendices

Hester submitted the following materials in support of his Motion:

1. Littlefield Police Department Report authored by Hester. Def.'s App. 1–11, ECF
   No. 175.
2. Case Presentment Sheets that Hester submitted to the Lamb County District
   Attorney (DA). *Id.* at 11–12.

---

[7] Welsh did not title the document as a motion, but he "moves to supplement his response" and concludes the document
with a prayer for relief. ECF No. 182, at 1, 3. Although docketed as "Plaintiff [sic] Supplemental Evidence," the
Court construes Welsh's filing as a motion.

3. TCCC Incident Reports. *Id.* at 14–26.

4. Witness Statements from TCCC officers and resident Randy Carr. *Id.* at 27–30.

5. TCCC nursing notes. *Id.* at 31–32.

6. Certified copies of grand jury indictment, jury verdict, and judgment of conviction related to November 13, 2017, offense. *Id.* at 33–36.

7. Select criminal trial testimony. *Id.* at 37–45, 48–82.

8. Video recordings from November 13, 2017, incident. *Id.* at 46–47 [Exs. U, V].

9. Decl. of Ross Hester. *Id.* at 83–86 [hereinafter Hester Decl.].

Welsh did not object to any of Hester's evidence.[8] *See* Pl.'s Resp. 8–30. The Court has therefore considered Hester's evidence in connection with his motion. *See Hollie*, 2019 WL 2336931, at *1 n.1.

Welsh also submitted purported summary judgment evidence with his Response[9]:

1. Criminal trial testimony transcripts. Pl.'s App. 2–91, 93–619.

---

[8] Specifically, Welsh did not object to Exhibit A, which is titled "Littlefield Police Department Offense/Incident Report" and was apparently authored by Hester, or to the TCCC Incident Reports (Exhibits D–J) authored by various TCCC staff. Def.'s App. 1–26. Exhibit A purports to be a police report and Exhibits D–J appear to be reports prepared after the November 13 use of force incident, which could be put into admissible form at trial—through the affidavit of a record keeper or the individuals' live testimony. Fed. R. Civ. P. 56(c); *see LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)) ("At the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'").

And although hearsay (and hearsay within hearsay), they likely fall under at least two exceptions to Federal Rule of Evidence 803—Rule 803(6), the business records exception, and Rule 803(8), the public records exception. "In the Fifth Circuit, Rule 803(8) reports are presumed to be trustworthy and admissible; therefore, it is the burden of the party opposing admission to demonstrate a lack of trustworthiness." *Valentine v. Hodnett*, No. 5:14–CV–72, 2015 WL 12942069, at *3 (S.D. Tex. Sept. 16, 2015), *R. & R. adopted by* 2016 WL 806877 (S.D. Tex. Mar. 2, 2016). Other than his general claim that Hester conspired to falsely charge him, Welsh has presented no argument suggesting that Exhibit A is not trustworthy or should otherwise not be considered. *See Hollie v. City of Bryan*, No. 4:17-CV-3339, 2019 WL 2336931, at *1 n.1 (S.D. Tex. May 31, 2019) (considering defendants' summary judgment evidence "despite the fact that many of the statements contained therein [were] arguably hearsay within hearsay," where plaintiffs did not object and statements could therefore be considered by the court). Moreover, Hester does not submit the TCCC staff reports for the truth of the matter asserted but instead offers them to show the statements upon which Hester relied in conducting his investigation. *See Coleman v. Jason Pharms.*, 540 F. App'x 302, 306 (5th Cir. 2013) (per curiam) ("Accordingly, because the unsworn statements were not offered to prove the truth of the matter asserted in them, [plaintiff] has not shown that the district court erred in admitting and considering the unsworn statements.").

[9] Welsh's Amended Complaint is not verified. *See* ECF No. 20. The Court therefore cannot consider it as competent summary judgment evidence supporting Welsh's claims. *Cf. Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) (per curiam) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit."). The Court may, however, "for purposes of resolution of the motion for summary judgment only, . . . treat the factual allegations of [Welsh's] complaint as admissions" against him. *See Isquith ex rel. Isquith v. Middle S. Utilities, Inc.*, 847 F.2d 186, 195 (5th Cir. 1988).

2. Decl. of Lonnie Kade Welsh. *Id.* at 621–22 [hereinafter Welsh Decl.].

3. Printouts from WebMD. *Id.* at 624–34.

4. Aff. of John Alexander, a TCCC resident. *Id.* at 636.

5. TCCC Observation Logs. *Id.* at 638–71.

In his Reply, Hester objects to Welsh's Exhibit F, the Affidavit of TCCC resident John Alexander. Pl.'s App. 636. Mr. Alexander's affidavit summarizes an ostensible surveillance video of the November 13, 2017, incident. *See id.* (stating that Welsh asked him "to watch an abusive force video on the law library computer" and "from what [Alexander] seen [sic] on video [Welsh] was clearly injured" after TCCC staff "bang[ed] [Welsh's] head into the floor multiple times"). Defendant Hester argues that the affidavit constitutes inadmissible hearsay. Def.'s Reply 10.

Rule 56(c)(2) provides that a court may consider information on summary judgment if it can be "presented in a form that would be admissible in evidence." *See Santos v. White*, 18 F.4th 472, 477 (5th Cir. 2021) ("To be considered on summary judgment, materials must be of a type that can be 'presented in a form that would be admissible in evidence.'" (quoting Fed. R. Civ. P. 56(c)(2))). "A statement is hearsay if it is not made while testifying and a party 'offer[s it] in evidence to prove the truth of the matter asserted' in the statement." *Id.* (quoting Fed. R. Evid. 801(c)). Moreover, Rule 56(c)(4) requires that an affidavit "used to support or oppose a motion [for summary judgment] must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4).

The Court need not decide whether the video constitutes hearsay as it suffers from more fundamental defects. Welsh has provided no facts or evidence authenticating the video in general or demonstrating that Mr. Alexander has personal knowledge the video is what it purports to be. *See* Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). In addition, considering Mr. Alexander's affidavit would violate the best evidence rule. Rule 1002 requires that "[a]n original writing, recording, or photograph" must

be used "to prove its content." Fed. R. Evid. 1002. Hester has provided an authenticated copy of the November 13 video through his summary judgment evidence (Ex. U), which the Court has reviewed. Mr. Alexander's testimony, however, consists of his description of events depicted in a video (that may or may not be the same) and thereby violates Rule 1002. *See, e.g.*, *Freeman v. City of Fort Worth*, No. 4:10-cv-888-Y, 2011 WL 2669111, at *3 (N.D. Tex. July 7, 2011) (excluding under the best-evidence-rule affidavit testimony describing contents of a Wal–Mart security video); *see also Monceaux v. The Kroger Co.*, No. 2:14-cv-2492, 2016 WL 1259869, at *3 (W.D. La. Mar. 28, 2016) (granting motion to strike affidavit of private investigator, which summarized video surveillance, because "the video surveillance evidence . . . speaks for itself"). The Court therefore does not consider Mr. Alexander's affidavit herein.

Similarly, the Court has not considered the printouts from internet website WebMD defining Welsh's purported injuries from the November 13 incident. Pl.'s App. 624–34. Welsh appears to submit the printouts to provide support for, or an explanation of, his theory on why his alleged injuries from the use of force were not immediately apparent. *See id.* (discussing definition of a bruise, stages of bruising, and when bruises commonly appear after injury). This information is hearsay, and Welsh has not demonstrated that it could be put into an admissible form at trial. The Court therefore will not consider it herein. *See, e.g.*, *Bentley v. Colon*, No. 0:13–cv–02322–RBH, 2015 WL 3400571, at *9 (D.S.C. May 27, 2015) (declining to consider as summary judgment evidence plaintiff's "print outs from internet cites [sic] such as WebMD and the National Institute of Health, as well as magazine articles from *Registered Dental Hygienist*," because such information constituted inadmissible hearsay).

Finally, the Court also observes that Welsh supplied more than six-hundred pages of trial transcripts. Pl.'s App. 2–91, 93–619. He did not highlight the relevant portions, but he did generally cite to certain excerpts from these transcripts in his Response. *See, e.g.*, Pl.'s Resp. 12,

20. The Court has considered the portions of Welsh's exhibits he expressly cited in support of his opposition. Any evidence he submitted but did not specifically reference, however, the Court has not considered. *See, e.g.*, *United States v. del Carpio Frescas*, 932 F.3d 324, 331 (5th Cir. 2019) (per curiam) ("Judges are not like pigs, hunting for truffles buried in the record." (citation omitted)); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." (citation omitted)).

### 2. The district judge should deny leave to supplement.

Welsh moves to include supplemental summary judgment evidence concerning his motions to recuse state district judge Felix Klein and court orders regarding same. *See* ECF No. 182. Hester contends that Welsh's attempt to supplement his summary judgment evidence is improper because: (1) the filing is untimely; (2) Welsh did not obtain permission from the Court; and (3) the evidence is not relevant to whether Hester had probable cause to arrest Welsh. Def.'s Reply 10.

"Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Whether Judge Klein ultimately recused from state court proceedings involving Welsh is not relevant to determining whether Hester had probable cause to arrest Welsh based on the November 13 incident.[10] Thus, the Court would not have relied on the recusal-related information, even if Welsh had submitted it with his initial Response, and the undersigned recommends the district judge **DENY** Welsh's motion for leave to file supplemental evidence.

---

[10] Welsh alleges that Judge Klein's purported bias tainted "the entire [criminal] case." Pl.'s Resp. 27. But the procedural history of the criminal trial—or Judge Klein's rulings during the course thereof—has no bearing on Welsh's claim that Hester conspired to "press false charges" against Welsh (Am. Compl. 65), particularly where the Court has concluded that Welsh's claim is properly considered under the Fourth rather than the Fourteenth Amendment. *See infra* Section IV.B.1.a.

### 3. The district judge should grant Hester's Motion to Strike.

Without seeking leave, Welsh filed a Sur-Reply. ECF No. 189. Hester moves to strike the document, arguing that Welsh not only failed to seek leave, in violation of Local Civil Rules 7.1(f) and 56.7, but also that Welsh has not identified an exceptional or extraordinary reason to justify the filing. Mot. to Strike 1–2.

"Local Civil Rule 7.1 contemplates the filing of only a brief in support of an opposed motion, a response, and a reply brief." *Nat'l Liab. & Fire Ins. Co. v. Young*, No. 6:19-CV-031-H, 2020 WL 6119912, at *1 (N.D. Tex. Apr. 24, 2020). More specifically, N.D. Tex. Local Civil Rule 56.7 provides that "[e]xcept for the motions, responses, replies, briefs, and appendices required by these rules, a party may not, without the permission of the presiding judge, file supplemental pleadings, briefs, authorities, or evidence." In short, the Northern District of Texas's Local Civil Rules "do not contemplate sur-replies." *Young*, 2020 WL 6119912, at *1 (citation omitted).

A court may, however, permit a sur-reply "when the movant raises new legal theories or attempts to present new evidence at the reply stage, *and only when* a party seeks leave of court to file a surreply." *Id.* (emphasis added) (citation omitted); *see Mason v. AT&T Servs., Inc.*, No. 3:18-cv-00322-N (BT), 2019 WL 7667212, at *1 (N.D. Tex. Aug. 26, 2019) (explaining that "surreplies are 'highly disfavored' and permitted only in 'extraordinary circumstances,' such as when necessary to respond to new issues, theories, or arguments raised for the first time in a reply brief" (citation omitted)). The decision "to allow filing a surreply is within the sound discretion of the district court, subject to review for abuse of discretion." *Embry v. Hibbard Inshore, L.L.C.*, 803 F. App'x 746, 749 (5th Cir. 2020) (per curiam).

Welsh did not seek leave of Court to file his Sur-Reply. *See* ECF No. 189. On this basis alone, Hester's motion should be granted. Moreover, Welsh does not set forth extraordinary

circumstances justifying the necessity of filing a sur-reply. Welsh contends that Hester's Reply "raised several points that are simply not true[, and] consist of purposely [sic] misstatements and lies." *Id.* at 1. Welsh then proceeds to re-argue evidentiary and legal issues addressed in Hester's Reply. *Id.* at 2–8. Welsh does not, however, point to any "new issues, theories, or arguments raised for the first time in a reply brief," and having independently reviewed Hester's Reply, the Court finds none. *Mason*, 2019 WL 7667212, at *1. In essence, Welsh disagrees with Hester's characterization of the arguments in Welsh's Response. ECF No. 189, at 2–8.

Welsh's attempt to "have the last word" illustrates why sur-replies are highly disfavored. *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001) ("Surreplies, and any other filing that serves the purpose or has the effect of a surreply, are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter."). Because Welsh did not seek leave of Court to file his Sur-Reply and did not show exceptional circumstances necessitating the filing, the undersigned recommends that the district judge **GRANT** Hester's Motion (ECF No. 190) and strike Welsh's Sur-Reply (ECF No. 189). *See, e.g.*, *Horton v. Med-Sense Guaranteed Ass'n*, No. 3:20-cv-3470-L-BN, 2021 WL 3832830, at *3 (N.D. Tex. Apr. 6, 2021) (recommending the court strike plaintiff's sur-replies, where plaintiff "did not ask for permission to file his sur-replies, nor did he identify any exceptional circumstances"); *Mason*, 2019 WL 7667212, at *1 (granting defendant's motion to strike because plaintiff did not show "any extraordinary circumstances that necessitate the filing of a surreply").

### B. Statement of facts alleged in the competent summary judgment evidence.

On November 13, 2017, Welsh engaged in a "verbal dispute" with TCCC employee Robby Spencer during a medical transport away from the facility. Welsh Decl. 621; Def.'s App. 41–44.[11]

---

[11] Welsh's declaration and Response state that the incident occurred September 13. Pl.'s App. 621; *e.g.*, Pl.'s Resp. 29. In his Amended Complaint, however, Welsh avers that November 13 is the date of the incident. Am. Compl. 56.

Spencer returned Welsh to the TCCC, where Welsh then refused to enter his cell, sitting down "in front of Alpha 109 cell to protest the [facility's] conditions." Welsh Decl. 621; *see* Def.'s App. Ex. U 0:07–3:22. TCCC Security Officers Dustin Tijerina, Kevin Tedder, Javier Ramirez-Vega, Arnulfo Hernandez Jr., and Bryan Mosley were involved in the use of force, which began around 7:12 a.m. Def.'s App. 8–10, 17–25; Def.'s App. Ex. U 0:16–:20. In their incident reports, Tijerina, Tedder, Ramirez, Hernandez, and Mosley all generally reported that after Welsh refused to obey orders to return to his housing area, they used force to gain compliance from Welsh. Def.'s App. 17–25; *see* Def.'s App. Ex. U 1:01–3:58 (showing that Welsh sat on the floor, refusing to comply with orders to return to his room (including by placing his fingers in his ears and yelling at Woods, "I can't hear you, sir"), and telling officers "you're not touching me" and "get your hands off me b\*\*ch"), 3:53–10:48 (demonstrating that officers physically moved Welsh to a room). After physically placing Welsh in his cell, Tijerina, Tedder, Ramirez, Hernandez, and Mosley secured the door at approximately 7:22 a.m. and left the area. Def.'s App. 17–25; Def.'s App. Ex. U 10:45–11:03 (Security Director Woods stated on video that officers concluded using force at approximately 7:22 a.m.). The video reflects that when the officers closed the door, Welsh was sitting upright on the floor. Def.'s App. Ex. U 10:50–:53. Welsh is visible through the glass window; there are no apparent injuries to his face. *Id.* at 10:53–11:12. Welsh, however, maintains that the officers' use of force resulted in injuries, including bruises, scrapes, and pain. Welsh Decl. 621–22; Def.'s App. Ex. V 00:55–1:54.

Welsh avers that beginning at approximately 7:35 a.m.—i.e., thirteen minutes after being placed in the room—"staff placed a camera in front of [his] door." Welsh Decl. 622; *see* Def.'s App. Ex. V 0:46–:51 (showing a camera on a tripod outside Welsh's room). TCCC staff also sat

---

Hester's summary judgment evidence similarly reflects November 13 as the relevant date. *See, e.g.*, Def.'s App. 1, 7–8, 12–14; Hester Decl. 1 ¶ 3; Def.'s App. Ex. U 00:16–:20. The Court therefore uses the November 13 date.

in front of Welsh's door and kept "an observation log." Welsh Decl. 622. Welsh observed the camera's red recording light, and "[s]taff periodically either checked the memory or replaced the memory flash drive while [Welsh] was in the cell." *Id.*

Following the conclusion of the incident, Welsh reportedly "wanted to make a criminal complaint about being assaulted by TCCC officers," so Woods called Hester (Littlefield Police Department's Chief of Police), who came to the facility around 2:00 p.m. on November 13. Hester Decl. 1 ¶ 3; Pl.'s App. 495; Def.'s App. 6, 15, 61, 66; Def.'s App. Ex. V 00:00–1:54. Upon his arrival at the TCCC, Hester spoke with Woods, who advised he had observed Welsh punching himself, and Hester also watched a video recording of the incident. Def.'s App. 6–7; Pl.'s App. 543; *see* Def.'s App. Ex. U. Hester then communicated with Welsh, at which time Hester observed that Welsh's "cheek beneath his right eye was very blue and swollen likened to the term 'goose-egg.'" Def.'s App. 6; *see* Welsh Decl. 622 (acknowledging that he talked to Hester the afternoon of November 13); Def.'s App. Ex. V 0:55–1:47. Moreover, Hester noticed that Welsh "had several blueish purple bumps on his forehead and his eyes were red." Def.'s App. 6. Hester also "saw that [Welsh's] hands and knuckles were blueish and somewhat . . . scuffed swollen." *Id.*

After reviewing the use-of-force video, TCCC staff and resident reports and statements, and speaking with Welsh, Hester determined that Welsh had physically injured himself and then falsely reported that TCCC staff injured him. Specifically, Hester concluded that Welsh had "committed the offense of Fabricating Physical Evidence by causing himself physical injury"— i.e., a violation of Texas Penal Code § 37.09. Def.'s App. 11. Hester also determined that Welsh "committed an offense of False Report to a Peace Officer with [the] intent to deceive," a violation of Texas Penal Code § 37.08, in that Welsh "knowingly made a false statement by presenting his bogus claim of suffering an assault that was material to a criminal investigation . . . ." *Id.* Before Hester left the TCCC, he advised Woods that he would "pursue" a criminal charge against Welsh

under § 37.09. *Id.* at 15; *accord* Pl.'s App. 333–34, 540.[12]  Indeed, Hester elected to "present [the charges] to the Lamb County District [Attorney's] Office for their consideration of the filing of charges against" Welsh, which Hester did on November 14, 2017, by completing case presentment sheets. Def.'s App. 11–13.

Apparently after presenting the charges to the DA, Hester continued his investigation into the incident.  On November 20, Hester collected written reports and/or written statements (which most, if not all, are dated November 13) from the following individuals:  (1) Woods; (2) Mosley; (3) Tijerina; (4) Hernandez; (5) Tedder; (6) Ramirez-Vega; (7) Lesley Dinwiddie, TCCC Security Officer; (8) Margarito Gonzales, TCCC Captain; (9) Darquinton Cleveland, TCCC Captain; and (10) Randy Carr, TCCC resident. *Id.* at 7; *see id.* at 14–29.  On November 22, Hester interviewed resident Carr, who then provided a second witness statement to Hester.[13]  *Id.* at 6, 10; *see id.* at 30. Hester also reviewed, on November 21, nursing progress notes from the nurses who observed and/or examined Welsh on November 13. *Id.* at 10; *see id.* at 31–32.

In his report, Security Director Woods stated that as he re-entered the housing area with Nurse Sanchez, who was going to conduct a post use-of-force assessment, he observed Welsh striking himself in the facial area with closed fists. *Id.* at 15.  Similarly, TCCC resident Carr saw Welsh striking himself in the head.[14]  *Id.* at 29–30.  Welsh, however, denies striking himself "or caus[ing] any injuries to [him]self." Welsh. Decl. 622.

---

[12] There is some ambiguity in the summary judgment record as to whether Hester communicated to Woods that he was going to pursue criminal charges against Welsh.  But for purposes of its analysis herein, the Court views this issue in a light most favorable to Welsh, i.e., accepting as true his allegation that Welsh stated the day of the incident he intended to bring charges against Welsh.

[13] Hester's report does not make clear the date on which he obtained a copy of Carr's first witness statement, which is dated November 13. Def.'s App. 10, 29.

[14] Carr stated that he witnessed Welsh "hitting himself in the head in the entryway of A109." Def.'s App. 29.  The use of force occurred outside A109, and TCCC staff then moved Welsh to A135. *See, e.g.*, *id.* at 15, 24; Welsh Decl. 616.

On November 28, 2017, the Littlefield Police Department and/or Hester obtained an arrest warrant and arrested Welsh,[15] and on January 4, 2018, a grand jury indicted Welsh on the charge of tampering or fabricating physical evidence with intent to impair in violation of Texas Penal Code § 37.09. Def.'s App. 33. A criminal jury trial ensued, and on May 18, a jury found him guilty of the offense. *Id.* at 34. Welsh appealed the jury verdict, however, and the Seventh Court of Appeals of Texas subsequently reversed the conviction. *See Welsh*, 570 S.W.3d at 967–68. The state court of appeals held that there was not sufficient evidence to support the jury's verdict because Welsh conveyed false information, but did not make, present, or use physical evidence "with knowledge of its falsity" in violation of § 37.09. *Id.*

## IV.   <u>Discussion</u>

Hester moves for summary judgment, alleging that qualified immunity precludes Welsh's conspiracy claim. Def.'s Br. 15–19. In particular, Hester asserts that he had probable cause to charge Welsh with a crime, and in any event, the independent-intermediary doctrine bars Welsh's

---

[15] Neither party has submitted an arrest warrant or any information showing whether Welsh appeared before a magistrate on either the § 37.08 or the § 37.09 charge. Hester's failure to submit summary judgment evidence on this point is troublesome given his argument that he is entitled to summary judgment in part because he had probable cause to arrest Welsh for a § 37.08 violation. *See* Def.'s Br. 15–17; Def.'s Reply 2–4 (maintaining Hester is entitled to qualified immunity "based upon the probable cause alone that Chief Hester had for determining that a violation of § 37.08 occurred").

Nevertheless, Welsh indicates in his Response that "Hester [did] obtain an arrest warrant." Pl.'s Resp. 15. Moreover, the authenticated records the Court received during the screening phase of this case show that Hester signed criminal complaints on November 27 asserting Welsh violated §§ 37.08 and 37.09. The same day, Hester also obtained an arrest warrant based on the § 37.09 charge. Based on those charging instruments, officers with the Littlefield Police Department arrested Welsh on November 28, and the next day Welsh appeared before a magistrate *on both charges*. *See also Welsh*, 2019 WL 11706176, at *29 (discussing Welsh's arrest and appearance before a magistrate). At that appearance, "Welsh signed a form acknowledging that the judge advised him of his rights and that he did not want to request a court appointed attorney on the charge." *Id.*; *see also Welsh*, 845 F. App'x at 321 (affirming Court's determination that Welsh appeared before a magistrate within the required time).

Because Welsh concedes Hester obtained an arrest warrant, the Court considers the foregoing facts herein. *Cf. City Nat'l Bank v. United States*, 907 F.2d 536, 544 (5th Cir. 1990) (refusing to treat as a "binding judicial admission" a misstatement in appellate brief addressing whether substantial evidence supports a jury verdict, noting that such a circumstance "is unlike admissions of fact in a summary judgment brief used to determine whether or not there is a genuine issue of material fact").

claim. *Id.* at 15–17. Moreover, Hester argues that Welsh has not established that he conspired to violate Welsh's constitutional rights. *Id.* at 17–19. As discussed below, the undersigned finds that Welsh (1) has not demonstrated Hester violated his Fourth Amendment rights, and (2) even if Welsh can show a violation, he has not submitted summary judgment evidence demonstrating a civil conspiracy between Hester and Woods. Thus, the undersigned concludes Hester is entitled to qualified immunity on Welsh's conspiracy claim.

### A. Hester has met his burden of raising the qualified immunity defense in good faith.

As outlined above, government officials seeking summary judgment on the affirmative defense of qualified immunity need only raise the defense in good faith; they need not present evidence to support the good-faith assertion. *Gates*, 537 F.3d at 419. Hester raised the defense both in his Answer and in his Motion for Summary Judgment, and he has proffered summary judgment evidence in support. *See* Def. Ross Hester's Answer 1–2, ECF No. 103; Def.'s Br. 1–2, 15–19. In addition, Hester explains in his motion why he is entitled to qualified immunity: he did not violate Welsh's constitutional rights, there is no evidence of a conspiracy, and his conduct was objectively reasonable given the circumstances. Def.'s Br. 1–2, 15–19.

By asserting the defense of qualified immunity, Hester has carried his initial summary judgment burden. *See Gates*, 537 F.3d at 419. The burden now shifts to Welsh to produce or identify evidence showing Hester violated his constitutional rights and that the violation was objectively unreasonable under clearly established law at the time of the incident. *See Solis*, 31 F.4th at 980; *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007).

### B. Hester is entitled to qualified immunity on Welsh's conspiracy claim.

In Count 11 of his Amended Complaint, Welsh maintains that Hester and Woods conspired to bring false charges against him in connection with the November 13 incident. Am. Compl. 65–66; *Welsh*, 845 F. App'x at 321 (remanding Count 11's conspiracy claim after *Heck* bar was

removed). "[A] conspiracy claim is not actionable without an actual violation of section 1983." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995); *accord Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) ("No [constitutional] deprivation, no § 1983 conspiracy."). The undersigned therefore first considers whether Hester is entitled to qualified immunity on Welsh's claim that Hester "press[ed] false charges" (Am. Compl. 65)—i.e., the underlying purported § 1983 violation. *See Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022) ("If qualified immunity bars [plaintiff's] underlying [constitutional] claim, 'there [is] no need to reach the issue of whether a conspiracy existed to engage in those actions.'" (quoting *Hale*, 45 F.3d at 921)); *Morrow v. Washington*, 672 F. App'x 351, 354–55 (5th Cir. 2016) (per curiam) (providing that in a case involving Fourth Amendment and conspiracy claims, a court should first determine whether defendants are entitled to qualified immunity on Fourth Amendment claim "and *only if that is the case* should the court then consider whether [p]laintiff[] ha[s] alleged a conspiracy").

   **1. No underlying constitutional violation.**

   *a. Welsh's claim is properly analyzed under the Fourth Amendment.*

   Both parties seemingly agree that Welsh's claim against Hester turns on whether Hester had probable cause to initiate criminal charges against Welsh. *See, e.g.*, Def.'s Br. 15; Pl.'s Resp. 11, 22–23. Neither party, however, expressly addresses the constitutional amendment applicable to Welsh's claim. The Court therefore first outlines the appropriate constitutional framework.

   In his Amended Complaint, Welsh avers that "Hester charged [him] with fabricating physical evidence by assaulting his own face, and making a false report to a Peace Officer." Am. Compl. 65. Welsh alleges Hester "conspired with Chris Woods to press false charges against [him] for fabricating evidence." *Id.* Welsh further contends that "[t]hese charges were unreasonable and unfounded allegations to cover-up" an alleged excessive use of force. *Id.* Read together, the Court understands Welsh as alleging that both charges—under § 37.08 and § 37.09—were false. *See id.*

But other than this general allegation of pretrial misconduct, Welsh does not specify in his Amended Complaint whether he intends to raise a claim under the Fourth or Fourteenth Amendment. *See id.*

Welsh's Response, however, indicates that he is trying to proceed under both amendments. *See* Pl.'s Resp. 15–23 (discussing *Franks* and *Malley* and the alleged lack of probable cause), 23–26 (including a separate section titled "Did The Defendant Violate Welsh's Fourteenth Amendment Rights"). Indeed, Welsh asserts, without citing to a relevant portion of his Amended Complaint, that he has "plead[ed] that Hester committed perjury at trial, that [Hester] manufactured a felony to over charge Welsh of a crime he was incapable in law of committing." *Id.* at 23. In so doing, it appears Welsh attempts to allege a fabrication-of-evidence claim under the Fourteenth Amendment, as discussed in *Cole v. Carson. See* 802 F.3d 752, 765–74 (5th Cir. 2015) (recognizing a substantive due process claim based on plaintiffs' allegation that police deliberately fabricated evidence "to get [arrestee] charged to cover an unlawful use of force," where the Fourth Amendment provided no recourse for plaintiffs), *vacated sub nom. Hunter v. Cole*, 137 S. Ct. 497 (2016), *opinion reinstated in relevant part*, 935 F.3d 444 (5th Cir. 2019) (en banc); *see also Morgan v. Chapman*, 969 F.3d 238, 250 (5th Cir. 2020) (recognizing that "although *Cole* had a peripatetic procedural history," the court's holding "that there is a 'due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person'" remains "binding Fifth Circuit precedent today" (quoting *Cole*, 802 F.3d at 771)).

In *Cole*, the Fifth Circuit confirmed that "there is no 'substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause.'" 802 F.3d at 765 (quoting *Albright v. Oliver*, 510 U.S. 266, 268 (1994)). Nevertheless, the court held that "[w]here police intentionally fabricate evidence and successfully

get someone falsely charged with a felony as cover for their colleagues' actions, *and the Fourth Amendment is unavailing*, there may be a due process violation." *Id.* at 773 (emphasis added)).

Welsh's attempt to invoke the Fifth Circuit's holding in *Cole* through his summary judgment response is misplaced. First, a response is not a pleading, and Welsh did not expressly assert a Fourteenth Amendment claim in connection with the conspiracy allegation against Hester. Am. Compl. 65–66; *see* Fed. R. Civ. P. 7(a); *Cutera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."). Moreover, Welsh's Amended Complaint contains *no* allegations concerning Hester's alleged deliberate fabrication of evidence or perjury at trial. Am. Compl. 65–66. Indeed, Welsh could not have raised a claim based on perjured trial testimony, as he drafted his Amended Complaint no later than May 8, 2018—prior to the start of his criminal trial.[16] *See* ECF No. 18, at 2 (reflecting a postmark date of May 8, 2018).

In effect, Welsh appears to believe "that he should be entitled to [proceed] on any theory of recovery that fits the factual allegations in his pleadings, even if the theory of recovery or cause of action itself is not pleaded." *Harmon v. Dallas Cnty.*, 294 F. Supp. 3d 548, 567 (N.D. Tex. 2018). But at the summary judgment stage, and particularly given the extensive procedural history of Welsh's claims,[17] the Court will not entertain Welsh's effort to plead a new theory of recovery.

---

[16] The state court apparently held a pretrial hearing April 24, 2018, at which Hester testified. *See, e.g.*, Pl.'s App. 1, 68–69. Even liberally construing Welsh's Response as alleging that Hester committed perjury in this pretrial hearing, Welsh's failure to raise the claim in his operative pleading renders it unactionable.

[17] The Court permitted Welsh to amend his Complaint, conducted a *Spears* hearing, and thoroughly analyzed each of Welsh's claims in a sixty-six page order screening his claims under 28 U.S.C. § 1915. Welsh then appealed, and the Fifth Circuit largely affirmed this Court's order of dismissal, excepting three claims, two of which relate to the *Heck* bar at issue here. Thereafter, Welsh moved to amend, for a second time, his operative pleading, which the Court granted-in-part. ECF No. 157. The Court did not permit Welsh to amend his claim against Hester, finding the amendment untimely under Fed. R. Civ. P. 15(a)(1)(B). *Id.* at 6 & n.6.

*See S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 612 (5th Cir. 1993) ("[A] district court need not subject itself to the presentation of theories seriatim."); *Harmon*, 294 F. Supp. 3d at 567–68 (declining to permit plaintiff to add additional theories of recovery not raised in his complaint). Welsh's "blind-hog-occasionally-finds-an-acorn approach would play havoc with trial procedure and would negate the narrowing and winnowing process that occurs under the present federal rules." *S. Constructors*, 2 F.3d at 610. Thus, the Court does not construe Welsh's allegations as raising a Fourteenth Amendment fabrication-of-evidence claim. *See Robles v. Ciarletta*, 797 F. App'x 821, 832 (5th Cir. 2019) (per curiam) (affirming dismissal of plaintiff's "Fourteenth Amendment claim against [defendant] for filing a false police report," where plaintiff did not "argue that [defendant's] report indicate[d] the fabrication of facts"); *cf. Jones v. Perez*, No. 3:16-CV-2835-D, 2017 WL 4238700, at *10–11 (N.D. Tex. Sept. 25, 2017) (explaining that where plaintiff relied on same factual allegations for Fourth Amendment claim as substantive due process claim, his claim was "covered by the Fourth Amendment and should be analyzed only under that constitutional provision," particularly where plaintiff provided no evidence of deliberate fabrication (internal quotation marks omitted)).[18]

Having determined that Welsh cannot raise a Fourteenth Amendment claim, the Court evaluates Welsh's conspiracy claim against Hester based on an alleged Fourth Amendment violation. *Cf. Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2002) (en banc) ("The initiation

---

[18] Welsh's failure to plead facts in his Amended Complaint demonstrating Hester knowingly manufactured evidence or knowingly provided false testimony likely forecloses a fabrication-of-evidence claim whether raised under the Fourteenth or Fourth Amendment. *See, e.g., Robinson v. Meeks*, No. 3:17-CV-606-K, 2018 WL 1399478, at *9–10 (N.D. Tex. Mar. 20, 2018) (dismissing plaintiff's Fourth Amendment fabrication-of-evidence claims against defendants, where plaintiff did not allege that the purportedly false information formed the basis of probable cause for plaintiff's *arrest*—i.e., that defendants secured plaintiff's arrest via false evidence); *Rios v. City of Corpus Christi*, No. 2:14–CV–00409, 2017 WL 432886, at *3 (S.D. Tex. Feb. 1, 2017) (explaining that *Cole* and other related Fourteenth Amendment cases "require the knowing use of false testimony or manufactured evidence by police officers, prosecutors, or persons working with them"). As discussed herein, however, the undersigned has considered whether Welsh has presented competent summary judgment evidence concerning whether Hester violated the Fourth Amendment, including either a *Malley* or *Franks* violation.

of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example . . . ."); *see also Whittington v. Maxwell*, 455 F. App'x 450, 458 (5th Cir. 2011) (per curiam) (explaining that "[p]retrial detention constitutes a 'seizure'" under the Fourth Amendment, and regarding that claim, "the sole issue . . . is whether there is probable cause for detaining an arrested person pending further proceedings" (alteration omitted) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 120 (1975)); *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) (reviewing plaintiff's "unreasonable seizure" or false arrest claims under the Fourth Amendment); *Winfrey v. Rogers*, 901 F.3d 483, 491–92 (5th Cir. 2018) (concluding that plaintiff's "claim that he was wrongfully arrested due to the knowing or reckless misstatements and omissions in [defendant's] affidavits" was properly analyzed under the Fourth Amendment and reviewing cases in support). And regardless of Welsh's precise claim under the Fourth Amendment,[19] the Court, like the parties, focuses on whether Hester had probable cause. *See Cuadra*, 626 F.3d at 813 (explaining that even if the court analyzed plaintiff's allegation as "a false arrest or unreasonable seizure claim, [plaintiff] ha[d] failed to raise a fact issue as to lack of probable cause, a necessary component of each claim").

"To ultimately prevail on his section 1983" Fourth Amendment claim, Welsh "must show that [Hester] did not have probable cause to arrest him." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004); *see Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) ("The constitutional claim of false arrest requires a showing of no probable cause."). "Probable cause

---

[19] In addition to false arrest or fabrication of evidence, it is possible to characterize Welsh's claim as one for malicious prosecution. *See Thompson v. Clark*, 142 S. Ct. 1332, 1335, 1337 (2022) (recognizing a Fourth Amendment claim for malicious prosecution under § 1983 and observing that a malicious prosecution claim is "sometimes referred to as a claim for unreasonable seizure pursuant to legal process"); *Payton v. Town of Maringouin*, No. 21-30440, 2022 WL 3097846, at *3 (5th Cir. Aug. 3, 2022) (acknowledging that although prior Fifth Circuit cases have expressly held that there is no free-standing § 1983 claim for malicious prosecution, the Supreme Court recently recognized such a claim in *Thompson*). Regardless, Welsh must show Hester lacked probable cause. *Thompson*, 142 S. Ct. at 1337–38.

exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Haggerty*, 391 F.3d at 655–56 (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)). That is, Hester "is entitled to qualified immunity if a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstances of which [Hester] was aware, there was a fair probability that [Welsh] had committed or was committing an offense." *Id.* at 656.

Even where an officer "reasonably but mistakenly conclude[s] that probable cause is present," the officer is entitled to qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)); *see Anderson*, 483 U.S. at 641 (recognizing "that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and" are nevertheless entitled to qualified immunity in such circumstances). "If there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause, and the claim for false arrest fails." *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (per curiam) (quoting *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995)).

Importantly, courts must "apply an objective standard, which means . . . [courts] will find that probable cause existed if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense." *Hilton*, 568 F.3d at 204. Ultimately, qualified immunity "gives ample room for mistaken judgments" and shields "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341, 343.

*b.  The independent-intermediary doctrine bars Welsh's claim against Hester.*

Hester argues that even if Welsh could demonstrate Hester lacked probable cause, he is

entitled to summary judgment because independent intermediaries broke the chain of causation.

Def.'s Br. 15.  Hester submitted case presentment sheets to the DA recommending that Lamb

County prosecute Welsh for violations of Texas Penal Code §§ 37.08 and 37.09.  Def.'s App. 12–

13.  Texas Penal Code § 37.08 makes it an offense for a person, "with intent to deceive, . . . [to]

knowingly make[] a false statement that is material to a criminal investigation and [to] make[] the

statement to" a police officer.  Tex. Penal Code Ann. § 37.08(a)(1).  Under § 37.09(a)(2), a person

commits an offense if he, "knowing that an investigation or official proceeding is pending or in

progress, . . . makes, presents, or uses any record, document, or thing with knowledge of its falsity

and with intent to affect the course or outcome of the investigation or official proceeding."[20]

The grand jury—an independent intermediary—indicted Welsh for violating § 37.09(a)(2).

Def.'s App. 33.  Despite this indictment, Welsh contends that Hester is liable because: (1) he could

not have reasonably believed that Welsh "presented a record, document or thing by 'mak[ing] and

---

[20] It is unclear under which subsection of § 37.09 the grand jury indicted Welsh.  *See* Def.'s App. 33.  The "Charge" listed at the top of the indictment specifies "37.09(d)(1)."  *Id.*  A person commits a crime under § 37.09(d) if he, "knowing that an offense has been committed, alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in any subsequent investigation of or official proceeding related to the offense."  Tex. Penal Code § 37.09(d)(1).  In the body of the indictment, however, the grand jury found that Welsh, "knowing that an investigation was pending and in progress . . . intentionally and knowingly *ma[d]e and present[ed]* physical evidence"—one of the elements in § 37.09(a)(2).  *Id.* (emphasis added).  Specifically, § 37.09(a)(2) provides as follows:

> A person commits an offense if, knowing that an investigation or official proceeding is pending or
> in progress, he . . . makes, presents, or uses any record, document, or thing with knowledge of its
> falsity and with intent to affect the course or outcome of the investigation or official proceeding.

Tex. Penal Code § 37.09(a)(2).  In reviewing the sufficiency of the evidence, the Texas Court of Appeals cited § 37.09(a)(2)—the offense for which it believed Welsh was charged—but focused solely on the lack of evidence showing Welsh fabricated physical evidence.  *Welsh*, 570 S.W.3d at 966–67.

Welsh argues that this Court must evaluate whether Hester had probable cause to arrest him for a violation of § 37.09(d)(1) but maintains that under either section, probable cause was lacking.  Pl.'s Resp. 11.  Because the grand jury recited the elements of § 37.09(a)(2), and the Texas Court of Appeals likewise reviewed that subsection, this Court focuses on § 37.09(a)(2).

present[ing] physical evidence' of injuries" in violation of § 37.09; (2) the grand jury *indictment*, (what Welsh identifies as the *Malley* violation) was a bare bones recitation of the legal elements; and (3) Hester tainted the grand jury's indictment because Hester made intentional or reckless misrepresentations—i.e., a *Franks* violation. Pl.'s Resp. 15–22.[21] The Court considers whether Welsh has demonstrated that Hester tainted the grand jury proceedings.

"It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017) (quoting *Deville*, 567 F.3d at 170). "Thus, a properly secured arrest warrant or grand jury indictment will shield a defendant who has committed or initiated a false arrest." *Wilson v. Stroman*, 33 F.4th 202, 208 (5th Cir. 2022). But this "shield against liability"—known as the independent-intermediary doctrine—"is not absolute." *Mayfield v. Currie*, 976 F.3d 482, 487 (5th Cir. 2020).

An initiating party may be liable under the Fourth Amendment if the plaintiff shows that the intermediary's deliberations "were in some way tainted by the actions of the defendant"—i.e., the "taint exception."[22] *Cuadra*, 626 F.3d at 813 (citation omitted); *Wilson*, 33 F.4th at 208

---

[21] As noted by Hester, Welsh does not expressly plead facts in his Amended Complaint establishing an exception to the independent-intermediary doctrine. *See* Def.'s Reply 7. Because Welsh did not expressly raise a *Malley* or *Franks* allegation in his Amended Complaint, dismissal would be appropriate on that basis. *See Aubrey v. Ermatinger*, No. 3:19-CV-0056-B, 2020 WL 7225992, at *11–12 (N.D. Tex. Dec. 7, 2020) (granting summary judgment in favor of defendants on plaintiff's *Malley* claim, where plaintiff did not raise the claim in the operative complaint but instead asserted it in his summary judgment response). Nevertheless, Welsh generally claims in his Amended Complaint that the criminal charges Hester pursued were "unreasonable and unfounded allegations to cover-up the [alleged] assault" on Welsh by TCCC staff, and the Court therefore considers Welsh's *Malley* and *Franks* arguments herein. *See* Am. Compl. 65; *see also* Def.'s Reply 7 (objecting to Welsh's untimely "*Malley* and *Franks* allegations" but proceeding to address them).

[22] Although *Franks* and "the 'taint exception' to the independent intermediary doctrine" conceptually overlap, they are distinct: a *Franks* violation is a cause of action, while the taint exception "is an exception to a doctrine that *insulates* an official who would otherwise be liable for a false arrest." *Wilson*, 33 F.4th at 209. "As a practical matter, in cases involving only one intermediary, the allegations that prove a *Franks* claim will do double duty as the allegations that also establish the taint exception." *Id.* at 209–10. However, whereas here, a "second intermediary is

(citation omitted).  A plaintiff may also overcome the independent-intermediary doctrine where: (1) the officer obviously fails to present accurate evidence "to support the probable cause required for the issuance of a warrant"—i.e., a *Malley* violation; or (2) "officers . . . deliberately or recklessly provide false, material information for use in an affidavit or . . . make knowing and intentional omissions that result in a warrant being issued without probable cause"—known as a *Franks* violation.  *Mayfield*, 976 F.3d at 487 (internal quotation marks and alterations omitted) (quoting *Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017) (en banc)).

The Fifth Circuit's "taint exception" analysis in relation to the independent-intermediary doctrine has typically required a finding that the officer "maliciously sought to arrest someone without probable cause."  *Wilson*, 33 F.4th at 211 (acknowledging case law holding that where "an officer's malice could lead him to undermine the intermediary's independence . . . the chain of causation is broken only where all the facts are presented to the grand jury . . . [and] the *malicious motive* of the law enforcement official[] does not lead [him] to withhold any relevant information from the independent intermediary" (internal quotation marks and citation omitted)).  That is, "to satisfy the taint exception, omissions of exculpatory information must be 'knowing.'"  *Id.* (brackets omitted).  But the Fifth Circuit also observed in *Wilson* that while "this court" continues to quote the "malicious motive" language, "there are false arrest claims for which an officer can be liable that do not turn on the officer's malice—e.g., *Malley* and *Franks* claims."  *Id.* (recognizing that "no case has applied this 'knowing requirement' when the underlying claim is premised on *Malley* or *Franks* . . . [and] the reason why should be obvious: to do so would conflict with Supreme Court precedent").

---

involved," a plaintiff must demonstrate "that the second intermediary, like the first, did not have 'all the facts' before it necessary to render an independent determination of probable cause."  *Id.* at 210 (citation omitted).

Turning specifically to *Malley*, an officer commits such a violation where an affidavit in support of a warrant request is "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Mayfield*, 976 F.3d at 487 (quoting *Malley*, 475 U.S. at 344–45). "The *Malley* wrong is not the presentment of false evidence, but the obvious failure of accurately presented evidence to support the probable cause required for the issuance of a warrant." *Id.* (quoting *Melton*, 875 F.3d at 264). The question courts must ask in evaluating a plaintiff's *Malley* claim "is whether a reasonably well-trained officer in [the officer's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for a warrant." *Id.* (quoting *Jennings v. Joshua Indep. Sch. Dist.*, 877 F.2d 313, 317 (5th Cir. 1989)). "In other words, an officer can avoid liability under *Malley* if he presents a warrant affidavit that facially supplies probable cause to arrest the subject of the warrant." *Wilson*, 33 F.4th at 206.

Under *Franks*, on the other hand, a plaintiff's "Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes 'a false statement knowingly and intentionally, or with reckless disregard for the truth' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'" *Winfrey*, 901 F.3d at 494 (quoting *Franks*, 438 U.S. at 155–56). The warrant requirement is intended to permit "the magistrate to make an independent evaluation of the matter." *Id.* (quoting *Franks*, 438 U.S. at 165). To this end, affiants must "'set forth particular facts and circumstances underlying the existence of probable cause,' including those that concern the reliability of information and the credibility of the source to avoid 'deliberately or reckless false statements.'" *Id.* (alteration omitted) (quoting *Franks*, 438 U.S. at 165).

But "negligence alone will not defeat qualified immunity." *Id.* (citation omitted). Therefore, even an affiant's misstatement can only invalidate a warrant if the plaintiff shows "that the misstatement was the product 'of deliberate falsehood or of reckless disregard for the truth.'"

*Id.* (citation omitted). "Recklessness requires proof that the defendant 'in fact entertained serious doubts as to the truth' of the statement.'" *Id.* (citation omitted).

Critically, Welsh has not provided *any* competent summary judgment evidence demonstrating that Hester participated in the grand jury proceedings by, for example, testifying or submitting an affidavit.[23]  *See cf. Terwilliger v. Reyna*, 4 F.4th 270, 283 (5th Cir. 2021) (recognizing that the *Franks* "analysis must consider the role played by each defendant," and a "law enforcement officer 'must have assisted in the preparation of, or otherwise presented or signed a warrant application[,] in order to be subject to liability," or "[i]f an officer does not present or sign the affidavit, liability attaches only if 'he helped prepare the complaint by providing information for use in it" (citation omitted)); *Blake v. Lambert*, 921 F.3d 215, 220 (5th Cir. 2019) (holding *Malley* claim against school attendance officer survived motion for summary judgment where officer's warrant affidavit did "not provide any supporting facts from which a magistrate could independently determine probable cause").  Nor has Welsh shown that Hester tainted the grand jury deliberations through false testimony or false documents—he simply makes "mere allegations of taint." *McLin*, 866 F.3d at 689 (internal quotation marks and citation omitted). Instead, Welsh's summary judgment evidence focuses almost exclusively on the criminal trial proceedings post-indictment, and none of his materials reflect that Hester informed the grand jury's deliberations.

Moreover, the majority of the evidence to which Welsh points—that Hester did not specify how Welsh made physical evidence or used evidence to influence an investigation, and that Hester did not reconcile the timing of the investigation—are not "inaccuracies of a sort that would taint"

---

[23] The Court acknowledges that grand jury proceedings are generally conducted in secret. *Wilson*, 33 F.4th at 212 (quoting *Shields v. Twiss*, 389 F.3d 142, 147 (5th Cir. 2004)).  At this stage, however, on a motion for summary judgment on the defense of qualified immunity, Welsh needs to come forward with some evidence demonstrating Hester's involvement in the proceedings. *See Cuadra*, 626 F.3d at 813; *Buehler*, 824 F.3d at 555.

proceedings. *Buehler v. Dear*, 27 F.4th 969, 991 (5th Cir. 2022). Welsh does not cite any intentionally false statements in an affidavit (or other document).[24] *See* Pl.'s Resp. 20–22. Indeed, Welsh argues that Hester misapplied the facts to the legal elements of § 37.09, thus resulting in a tainted process. But all of the *facts* reported by Hester were at best substantially accurate, based on eyewitness statements, medical records, and video recordings, and at worst "merely different interpretations of events on which there was plainly room to disagree." *Buehler*, 27 F.4th at 992 (internal quotation marks, alterations, and citation omitted). "[A]n affiant's presentation of one plausible version of disputed facts to the magistrate judge does not taint the resulting" grand jury proceedings. *Id.* (internal quotation marks, alterations, and citation omitted).

Welsh also maintains that "Hester purposely misstated Carr's witness statement where Carr statement truly alleged he saw Welsh at Alpha 109 entryway." Pl.'s Resp. 28; *see id.* at 12. In his police report, Hester stated that Carr "saw Welsh through the window of Welsh's cell door." Def.'s App. 10. Even assuming, however, there was factual inconsistency between Hester's report and Carr's witness statement as to Welsh's exact location, Carr averred that he observed Welsh "hitting himself in the head." *Id.* at 29.

In addition, Welsh makes the unsubstantiated contention that "Woods made the video camera footage disappear that was in front of Welsh's cell."[25] Pl.'s Resp. 28. Thereafter, Welsh believes "Hester never inquired about the footage." *Id.* Welsh does not contend, however, that

---

[24] The Court has determined that Welsh's claim arises under the Fourth—not the Fourteenth—Amendment, but Welsh's fabrication-of-evidence claim would nevertheless fail under the Fourteenth Amendment for the same reason his *Franks* claim fails: he has not provided any evidence showing that Hester deliberately fabricated evidence. *See supra* note 18; *see also Jones*, 2017 WL 4238700, at *11 (concluding defendant was "entitled to summary judgment on [plaintiff's] substantive due process claim based on qualified immunity" because (1) plaintiff's claim was appropriately analyzed under the Fourth Amendment, and (2) plaintiff did not provide "any evidence of deliberate fabrication" and therefore *Cole* did not apply).

[25] Hester did not submit evidence controverting Welsh's contention that the video camera outside his cell was operational and recording. *See* Welsh Decl. 617. But Welsh submits *no* evidence to support his assertion that Woods destroyed the video evidence.

this video footage contained exculpatory evidence. *See id.*; Welsh Decl. 617. Based on Welsh's admission that there was at least a ten-minute lapse between when TCCC staff left his room and the beginning of the video recording, the Court finds the video would not have conclusively established Welsh's contention that he did not injure himself. *See Holcomb v. McGraw*, 262 F. Supp. 3d 437, 452 (W.D. Tex. 2017) (rejecting plaintiffs' contention that defendants "affirmatively tainted the intermediaries' decisions," where plaintiffs merely "cite[d] a myriad of additional facts the [d]efendants did not include in their probable cause affidavits, [but] [p]laintiffs [did] not show any of these facts could possibly [be] exculpatory"). Moreover, as to both purported errors— misstating Carr's witness statement and not obtaining video footage—Welsh has not demonstrated that correcting those errors would have deprived Hester of probable cause. Pl.'s Resp. 20–22.

Finally, Welsh argues that the indictment does not contain factual support for the purported § 37.09 violation, but is instead a bare bones recitation of the legal elements. Pl.'s Br. 18–19. Hester, however, did not draft the grand jury indictment form, which is merely the charging instrument. As Hester observes, the DA elected to pursue the § 37.09 violation, and presented that charge to the grand jury.[26] *See* Def.'s Reply 2 n.1. But even assuming the indictment is somehow attributable to Hester's initiation of charges under § 37.09, the evidence does not show that Hester failed to submit adequate facts in support of the charge. Instead, Hester (like the DA and the grand jury) mistakenly believed he had probable cause based on a flawed theory of culpability. *See Welsh*, 570 S.W.3d at 967 ("We express no opinion on the applicability of other Penal Code provisions to the facts of this case, but conclude merely that the conveyance of knowingly false information about the cause of real injuries is not a violation of section 37.09(a)(2).").

---

[26] Although not addressed by either party, the DA also likely served as an independent intermediary, insulating Hester from liability. *Cuadra*, 626 F.3d at 813 (holding that district attorney "qualified as independent intermediar[y]"). And to the extent a judge issued an arrest warrant (*see* Pl.'s Resp. 9, 15), that judge was an independent intermediary as well. *Mayfield*, 976 F.3d at 486 (quoting *Deville*, 567 F.3d at 170).

In sum, Welsh has not presented any evidence that Hester tainted the grand jury proceedings. Thus, Welsh has not established that the independent-intermediary doctrine does not apply. *See Wilson*, 33 F.4th at 212 (providing that where "a plaintiff *adequately pleads* that a second intermediary, such as a grand jury, has been misled" due to a *Malley* or *Franks* violation, "then the taint exception will apply to that intermediary's decision as well" (emphasis added)); *Buehler*, 824 F.3d at 555 (concluding that to overcome summary judgment, "the plaintiff must affirmatively show that the defendants tainted the intermediary's decision" (internal quotation marks, alteration, and citation omitted)); *Russell v. Altom*, 546 F. App'x 432, 437 (5th Cir. 2013) (per curiam) ("Because the grand jury indicted [plaintiff], he must show that [defendant] tainted the grand jury's deliberations in some way. There is no evidence, however, that [defendant] played any role in the indictment process."); *Cuadra*, 626 F.3d at 813–14 (holding that plaintiff failed to show chain of causation was not broken by grand jury's indictment where he provided no summary judgment evidence supporting taint allegation); *Melton v. Waxahachie Police Dep't*, No. 3:21-CV-2854-K-BH, 2022 WL 3636616, at *18 (N.D. Tex. Aug. 8, 2022) (concluding plaintiff failed to assert viable *Franks* claim where plaintiff did not show "that there were materially false statements or omissions in the affidavit underlying his arrest warrant" or "that the affidavit would fail to establish probable cause after excising any allegedly false representations and including alleged material omissions"), *R. & R. adopted by* 2022 WL 3639506 (N.D. Tex. Aug. 23, 2022); *Laymance v. Foster*, No. 6:19-CV-45-JDK-JDL, 2020 WL 8371876, at *13 (E.D. Tex. Dec. 22, 2020) (recommending court grant defendant's motion for summary judgment on plaintiffs' Fourth Amendment claim, where "[p]laintiffs also offered no competent summary judgment evidence . . . showing [defendant] affirmatively tainted the intermediaries' decisions"), *R. & R. adopted by* 2021 WL 327512 (E.D. Tex. Feb. 1, 2021).

*c. Hester had probable cause to charge Welsh with a violation of § 37.08.*

In addition to application of the independent-intermediary doctrine based on the § 37.09 charge, Hester also observes that he initiated charges under § 37.08—making a false report to a police officer. *See* Def.'s Br. 2, 9, 15–17; Def.'s Reply 3–4; *see also* Am. Compl. 65 (acknowledging that Hester initiated charges under § 37.08); *supra* note 15 (stating that Hester arrested Welsh for violations of §§ 37.09 *and* 37.08). Welsh does not specifically address Hester's § 37.08 argument in his Response. *See* Pl.'s Resp. 9–25; Def.'s Reply 2–3 (contending that Welsh has waived the § 37.08 argument by failing to address it in his Response).

Where an officer arrests an individual on multiple charges, if the officer possesses "probable cause for any of the charges made[,] . . . then the *arrest* was supported by probable cause, and the claim for false arrest fails." *Wells*, 45 F.3d at 95. To the extent Welsh's Fourth Amendment claim asserts false arrest, he likewise has not demonstrated that Hester violated his constitutional rights.

Before submitting the case presentment sheets to the DA, Hester had the following information:

- Video surveillance that does not clearly show a TCCC staff member hit or otherwise use force that would have resulted in Welsh's reported injuries. Def.'s App. Ex. U; Def.'s App. 6. The video surveillance also reflects that Welsh did not have any noticeable facial injuries immediately after the use of force. Def.'s App. Ex. U.

- Woods's statement to Hester that Welsh wanted to press charges against TCCC staff for purported assault. Def.'s App. 6.

- Woods's verbal report to Hester that he observed Welsh hitting himself. Pl.'s App. 543; *see* Def.'s App. 6–7.

- Hester's interview with Welsh, where Welsh reported that TCCC staff had caused his injuries. Def.'s App. Ex. V.

- Hester observed Welsh in the afternoon of November 13, at which point Welsh did have noticeable physical injuries, including facial bruising and swollen/bruised knuckles." Def.'s App. 6.

Hester avers that after reviewing this information, he believed he had probable cause. Hester Decl. 2 ¶¶ 6, 8. Nevertheless, Hester continued his investigation into the incident after submitting the presentment sheets, but before he sought an arrest warrant, and also obtained the following additional evidence:

- A witness statement from Chris Woods saying that he observed Welsh hitting himself in the face. Def.'s App. 7, 15.
- Witness reports and statements from the TCCC staff involved in the use of force incident. Def.'s App. 7–10, 17–26.
- Witness statements from TCCC resident Randy Carr averring that he observed Welsh striking himself. *Id.* at 29–30.
- Nursing notes documenting Welsh's injuries. *Id.* at 31–32.[27]

Based on the foregoing, the Court concludes Hester had sufficient probable cause to arrest Welsh for violating § 37.08. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) ("Probable cause is not a high bar," and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." (internal quotation marks and citations

---

[27] The Texas Court of Appeals' recitation of the evidence at trial lends further support for the probable cause analysis:

Appellant admitted during his testimony at trial that he had a "plan" to cause the employees to use force against him. His purpose for such a plan was to later sue the employees "to get paid" and to show that what the employees are doing at this facility "is actual punishment and not treatment." . . .

Nothing in the video shows the staff injured appellant in any way and no injuries are visible. The facility's director of security, Christopher Woods, testified he saw appellant shortly after he was returned to the facility. Woods told the jury that when he returned to speak with appellant about twenty minutes later, he saw appellant through the room window. He saw appellant "punching" himself in the face. . . . [A nurse] described [Welsh's] injuries as "self-inflicted injuries." . . .

Appellant asked Woods to call the police so he could file a report of assault by the staff. Littlefield Police Chief Ross Hester responded to the call and spoke with appellant that day. Appellant told him the staff "slammed [his] face in the freaking floor . . .". Hester testified he saw appellant had "some facial injuries" including a "large goose egg type welt underneath his right eye" and "several purplish bruises on his forehead." Hester noted also the "areas around [appellant's] hands were bluish, kind of swollen . . .". Hester also reviewed witness statements and the video and concluded appellant had not been assaulted. He testified that "[f]rom the video I saw, I saw no overt blows being struck or kicks administered or anything that would cause those kinds of injuries to his face." Woods testified he would not have called the police if appellant had not requested that he do so because the facility has its own investigatory procedure.

*Welsh*, 570 S.W.3d at 965.

omitted)); *Arizmendi v. Gabbert*, 919 F.3d 891, 898–99 (5th Cir. 2019) (agreeing that defendant had probable cause to find that plaintiff violated § 37.08, where plaintiff told defendant "she had not signed the grade change form, and later handwriting analysis refuted her claim"); *Zahorik v. Trott*, No. G–13–248, 2016 WL 2621992, at *5 (S.D. Tex. May 5, 2016) (concluding that defendants had probable cause to arrest plaintiff for violating § 37.08, where plaintiff's allegations showed that he knew before he filed a fraudulent report with police that a rouge agent was not accessing his credit information, and in any event, defendants were entitled to qualified immunity because they could have reasonably believed they had probable cause).

Simply put, for purposes of the Fourth Amendment, it is immaterial whether Hester lacked probable cause to arrest Welsh under § 37.09 because Hester certainly had probable cause to arrest Welsh under § 37.08. Thus, given that Welsh cannot establish an underlying constitutional violation, Hester is entitled to qualified immunity.

### 2. Even assuming Hester violated Welsh's Fourth Amendment rights, Welsh has not presented any evidence demonstrating Hester conspired to violate those rights.

Welsh's claim is, unquestionably, one for conspiracy. Am. Compl. 65; *Welsh*, 845 F. App'x at 321. But the legal framework around which Welsh attempts to structure his claim is, like his underlying false-charges claim, unclear. Welsh references both § 1983 and § 1985 on the first page of his Amended Complaint. Am. Compl. 1. Hester argues that Welsh has not established a conspiracy under § 1985. Def.'s Br. 17–18. In his Response, Welsh argues that he has demonstrated Hester engaged in a civil conspiracy under § 1983 and rejects Hester's assertion that he brings a conspiracy claim under § 1985. Pl.'s Resp. 28–29. The Court has examined both claims and finds neither availing.

"To establish a conspiracy claim under § 1983, the plaintiff must show that there was an agreement among the alleged co-conspirators to deprive him of his constitutional rights and that

such an alleged deprivation actually occurred." *Montgomery v. Walton*, 759 F. App'x 312, 314 (5th Cir. 2019) (per curiam). A plaintiff must put forth "specific, nonconclusory facts that establish that there was an agreement among the defendants to violate his federal civil rights." *Id.*; *accord Bevill*, 26 F.4th at 283 (explaining that plaintiff must demonstrate defendants "had an agreement to violate his constitutional rights under the color of state law").

> Under § 1985(3), Welsh must show that Hester:
>
> (1) conspired; (2) for the purpose of depriving, either directly or indirectly, [Welsh] of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) took or caused action in furtherance of the conspiracy; which (4) injured [Welsh] or deprived him of his rights or privileges as a United States citizen.

*Shaw*, 918 F.3d at 419.

In support of his conspiracy allegation, Welsh points to the following evidence: "Woods wrote a report that Hester planned to advance the criminal charges under 37.09 mere minutes after meeting with Welsh." Pl.'s Resp. 13 (citing Def.'s App. 11); *see also* Def.'s App. 15 (Woods notated in his incident report that "Chief Hester advised that due to it appearing that the injuries to Resident Welsh were self-inflicted, he was going to pursue criminal charges of 'Fabrication of physical evidence' . . . ."). Welsh also argues the evidence shows that Hester had determined, before meeting with Welsh, that Hester intended to charge Welsh under § 37.09. Pl.'s Resp. 13. Finally, Welsh generally points to several perceived inconsistencies in Hester's (and Woods's) testimony at Welsh's criminal trial. *Id.* at 13–14.

Initially, the Court observes that to the extent Welsh raises a conspiracy claim under § 1983, Hester is entitled to summary judgment because the Court has found that Hester did not violate Welsh's Fourth Amendment rights. *See, e.g.*, *Carroll v. City of Jefferson*, No. 2:21-CV-0392-RSP, 2022 WL 3141860, at *10 (E.D. Tex. Aug. 5, 2022) (granting defendants' summary judgment motion on plaintiff's civil conspiracy claim, where plaintiff did not establish underlying

constitutional violation).  But even assuming Welsh has demonstrated a violation of his Fourth Amendment rights, he must also establish Hester conspired to violate those rights.  *See Bevill*, 26 F.4th at 283 ("Because [plaintiff] has shown that [d]efendants are not entitled to qualified immunity [on plaintiff's First Amendment claim], we must determine whether he has stated a claim for conspiracy under § 1983.").  The evidence to which Welsh directs the Court does not "raise a suggestion of a proceeding agreement" between Hester and Woods.  *Id.* at 284 (alteration omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Instead, Welsh's evidence reflects "parallel conduct that" amounts to "independent action."  *Id.* (quoting *Twombly*, 550 U.S. at 557).

Woods called Hester—the Chief of Police for the Littlefield Police Department—to come to the TCCC because Welsh wanted to press charges for the TCCC staff members' alleged assault, and Woods wanted Hester to review video of the alleged use of force.  Pl.'s App. 536; Def.'s App. 6.  Upon arrival, Woods told Hester that he had observed Welsh hitting himself but that Welsh was accusing TCCC staff of assault—an incident to which Woods was also a witness.  Pl.'s App. 335–37; Def.'s App. 6, 14–15.  Hester viewed the video of the alleged use of force incident.  Def.'s App. 6, 61–62.  Hester then spoke with Welsh.  *Id.* at 62; Def.'s App. Ex. V.  Before Hester left, he advised Woods that he would "pursue" a criminal charge against Welsh under § 37.09.  Def.'s App. 15; Pl.'s App. 333–34, 540.

Viewing the evidence in a light most favorable to Welsh, the Court finds that Welsh nevertheless has failed to proffer any evidence showing a meeting of the minds between Hester and Woods to falsely charge Welsh with a crime.  Instead, Welsh's allegations consist primarily of conclusory assertions alleging conspiracy, rather than specific facts demonstrating an actual agreement between Hester and Woods, which are insufficient to state a viable claim.  *Cf. Montgomery*, 759 F. App'x at 314–15 (affirming district court's dismissal of plaintiff's conspiracy claim, where he did not plead specific facts supporting agreement, nor did he show an "alleged

common motive," between defendants); *Jabary v. City of Allen*, 547 F. App'x 600, 611 (5th Cir. 2013) (explaining that even where plaintiff alleged defendants held private meetings and actively conspired, plaintiff had not stated conspiracy claim because his allegations were conclusory and did not "create a reasonable inference that such an agreement existed"); *Sullivan v. Cnty. of Hunt*, 106 F. App'x 215, 220–21 (5th Cir. 2004) (per curiam) (holding that district court erred in denying summary judgment to defendants based on plaintiff's conspiracy claim, where even though evidence suggested relationship between plaintiff and defendants "was less than friendly, . . . the evidence available at the scene . . . justified the decision to take [plaintiff] into custody and commit him for a mental screening"); *Payton v. Town of Maringouin*, No. 18-563-JWD-EWD, 2021 WL 2544416, at \*39 (M.D. La. June 21, 2021) (granting defendants' summary judgment motion on plaintiff's conspiracy claim, where plaintiff demonstrated, "at best, only parallel conduct, and her claim of a conspiracy is conclusory and unsupported"); *Blakely v. Andrade*, 360 F. Supp. 3d 453, 490 (N.D. Tex. 2019) (finding plaintiff's allegations did not demonstrate that defendants entered into an agreement, nor did they "show that there was any agreement between them" and therefore, defendants were entitled to dismissal of plaintiff's conspiracy claim).

At best, Welsh's allegations describe parallel conduct between the two—Woods contacting authorities in response to Welsh's request to pursue criminal charges, and Hester arriving at the TCCC to investigate. Stated alternatively, while Welsh does allege individualized wrongdoing by Woods and Hester, leading to the filing of the purportedly false charge, he provides no facts demonstrating an agreement between the two to do so: Hester arrived at the TCCC based on a call from Woods asking Hester to investigate the November 13 incident; Hester met with Woods—the head of security and an alleged witness to Welsh's conduct—to discuss the incident prior to meeting with Welsh; Hester purportedly misstated Carr's witness statement in his report, i.e., identifying a location different than that described by Carr for where Welsh struck himself; Hester

allegedly failed to obtain video footage, which "Woods made . . . disappear" (an allegation for which Welsh provides no supporting evidence); Hester did not have evidence to support the § 37.09 charge; and according to Welsh, both Hester and Woods made factual misrepresentations at trial, i.e., *after* Welsh had been charged and indicted by the grand jury. Pl.'s Resp. 28. This evidence does not support a viable conspiracy claim. *See Payton*, 2021 WL 2544416, at \*39 (finding plaintiff described only parallel conduct, where plaintiff alleged that private citizen told defendant police officer about plaintiff's alleged misconduct); *Carr v. Montgomery Cnty.*, 59 F. Supp. 3d 787, 806 (S.D. Tex. 2014) (granting defendants' motion to dismiss plaintiff's conspiracy claim, explaining that although plaintiff alleged district attorneys and officers spoke before searching plaintiff's home and evidence suggested officers may have agreed to change their stories at some point, plaintiff had not plausibly demonstrated an agreement among defendants *before* the search, nor did plaintiff show an agreement to violate her rights).

As to any claim under § 1985(3) (the only potentially applicable subsection under § 1985), Welsh likewise fails to demonstrate a viable cause of action. As this Court has previously held, Welsh's status as a sexually violent predator is not afforded protection under § 1985(3). ECF No. 43, at 62; *see, e.g.*, *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)) (recognizing that to establish a § 1985(3) claim, "a plaintiff must show, *inter alia* . . . that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action'"); *McLellan v. Miss. Power & Light Co.*, 545 F.2d 919, 928 (5th Cir. 1977) (explaining that the Fifth Circuit has not explicitly decided whether § 1985 extends beyond racial animus); *Jones v. Tyson Foods, Inc.*, 971 F. Supp. 2d 648, 668 (N.D. Miss. 2013) ("A § 1985(3) class must possess a discrete, insular, and immutable characteristic, such as race, gender, religion, or national origin."). Moreover, Welsh has not provided any evidence showing that any class-based animus motivated Hester and

Woods to conspire against Welsh. Thus, Welsh's § 1985(3) claim fails. *See, e.g.*, *Bright v. City of Killeen*, No. 6:20-CV-431-ADA-JCM, 2021 WL 4431114, at \*6 (W.D. Tex. May 11, 2021) (recommending dismissal of plaintiff's § 1985 conspiracy claim because plaintiff did not plead facts suggesting defendants "conspired to violate [his] rights based on [his] membership in a protected class of persons"), *R. & R. adopted by* 2021 WL 4427486 (W.D. Tex. Sept. 27, 2021).

In sum, Hester is entitled to summary judgment on the basis of qualified immunity for Welsh's conspiracy claim because Welsh has not established Hester violated his Fourth Amendment rights, nor has he shown Hester and Woods engaged in a civil conspiracy.

## V.    Recommendation

For these reasons, the undersigned **RECOMMENDS** that the United States District Judge: (1) deny Welsh's motion to file supplemental evidence (ECF No. 182); (2) grant Defendant Ross Hester's Motion to Strike (ECF No. 190) and strike Welsh's Sur-Reply (ECF No. 189); and (3) grant Hester's Motion for Summary Judgment on the issue of qualified immunity. ECF No. 173.

## VI.    Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that

are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: September **30**, 2022.

_____

**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**