IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| LONNIE KADE WELSH,<br>Institutional ID No. 6516607,<br><br>Plaintiff,<br><br>v.<br><br>CORRECT CARE RECOVERY<br>SOLUTIONS, *et al.*,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 5:18-CV-020-BQ |

## REPORT AND RECOMMENDATION[1]

Pro se Plaintiff Lonnie Kade Welsh asserts claims under 42 U.S.C. § 1983 and Texas state law against Defendants Lesley Dinwiddie, Margarito Gonzales, Arnulfo Hernandez, and Bill Vanier, which arise from his confinement at the Texas Civil Commitment Center (TCCC) in Littlefield, Texas. Am. Compl. 2–5, 54–56, ECF No. 20.[2] Defendants now move for summary judgment on all of Welsh's claims (ECF No. 255) and have filed a brief and appendix in support. ECF Nos. 256, 257, 258. Welsh filed a response with an accompanying brief and appendix (ECF No. 266), to which Defendants submitted their reply. ECF No. 267. For the reasons stated herein, the undersigned recommends that the United States District Judge **GRANT-in-part** and **DENY-in-part** Defendants' Motion for Summary Judgment. The undersigned further recommends the district judge (1) **OVERRULE** Welsh's evidentiary objections, (2) **OVERRULE as moot** Defendants' evidentiary objections based on hearsay, lack of personal knowledge, and conclusory

---

[1] The Honorable Sam R. Cummings, Senior United States District Judge, transferred this case to the undersigned for pretrial management. *See, e.g.*, ECF Nos. 13, 204. Not all parties have consented to proceed before the magistrate judge.

[2] Page citations to Welsh's pleadings refers to the electronic page number assigned by the Court's electronic filing system.

assertions, and (3) **OVERRULE** Defendants' generalized evidentiary objections to purported contradictory statements.

## I.    Background and Pleadings[3]

### A. Procedural History

Proceeding pro se and *in forma pauperis*, Welsh filed this action, alleging multiple claims against thirty-five Defendants in thirteen specific counts, plus additional "miscellaneous claims." *See* ECF No. 20. In Count 1 of his Amended Complaint, Welsh contends that on January 22, 2016, Defendant Vanier used excessive force [hereinafter January UOF]. Am. Compl. 4–5. In Count 10, Welsh alleges *inter alia* that on November 13, 2017, Defendants Dinwiddie, Hernandez, and Gonzales used excessive force against him [hereinafter November UOF]. *Id.* at 56–57.

On April 24, 2019, the Court entered an Order of Dismissal and Judgment dismissing Welsh's Amended Complaint and all claims therein. ECF Nos. 43, 44. The Court dismissed Counts 1 and 10 as barred under *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). The Court dismissed Count 1 as *Heck*-barred based on Welsh's conviction for assault causing bodily injury due to his biting a TCCC staff member during the January UOF and Count 10 based on Welsh's state court conviction for fabricating evidence in violation of Texas Penal Code § 37.09. During the pendency of Welsh's post-judgment motions and appeal in this case, however, the Seventh Court of Appeals of Texas reversed Welsh's fabrication-of-evidence conviction. *Welsh v. State of Texas*, 570 S.W.3d 963, 968 (Tex. App.—Amarillo 2019, pet. ref'd).

The Texas Court of Appeals' acquittal thereby required reversal by the Fifth Circuit Court of Appeals of this Court's *Heck* dismissal of the Count 10 excessive force claim and its

---

[3] In previous orders the Court has extensively discussed the procedural history of this case. *See, e.g.*, ECF Nos. 81, 157. The Court therefore only highlights facts relevant to Defendants' motion.

reinstatement. *See Welsh v. Correct Care Recovery Sols.*, 845 F. App'x 311, 316 (5th Cir. 2021).

The Fifth Circuit also reversed the dismissal of Welsh's Count 1 excessive force claim, reasoning

that "fairly read, the complaint alleges that Vanier's use of excessive force occurred" *after* Welsh

was handcuffed and subdued and no longer resisting. *Id.* at 316–17. On remand, this Court ordered

Defendants to answer in connection with Welsh's allegations. ECF Nos. 81, 107. Defendants

filed responsive pleadings. ECF Nos. 110, 112, 126, 218.

Contemporaneously, Welsh filed a motion to amend his operative pleading. ECF No. 120.

The Court granted the motion in part. ECF No. 157. The Court found "that Welsh . . . timely

amended his operative pleading *only* as to Defendants Gonzales, Hernandez, and Vanier and *only*

as to the following claims and/or factual allegations:"

1. bystander liability claim against Defendant Gonzales;

2. factual allegation that Defendant Hernandez straightened, twisted, and lifted Welsh's left arm "until it popped out of his socket-joint causing extreme pain"; and

3. Texas state law claims against Defendants Gonzales and Hernandez for assault and intentional infliction of emotion distress (IIED), and against Defendant Vanier for assault, IIED, false arrest, and negligence.

*Id.* at 9. As such, the following claims remain live:

- **Defendant Vanier**: claim under § 1983 for excessive use of force based on the January UOF (Am. Compl. 4–5); state law claims for assault, IIED, false arrest, and negligence (ECF No. 157, at 9; ECF No. 120, at 19 [hereinafter Am. Suppl. Compl.]; Am. Compl. 7).

- **Defendant Dinwiddie**: claim under § 1983 for excessive use of force based on the November UOF. Am. Compl. 56–57.

- **Defendant Hernandez**: claim under § 1983 for excessive use of force based on the November UOF (*id.*); state law claims for assault and IIED (Suppl. Am. Compl. 17–18).

- **Defendant Gonzales**: claims under § 1983 for excessive use of force and bystander liability based on the November UOF (Am. Compl. 56–57; Suppl. Am. Compl. 7 ¶ 10, 9 ¶ 22, 17 ¶ 75); state law claims for assault and IIED (Suppl. Am. Compl. 17–18).

Defendants now move for summary judgment on all claims.  ECF No. 255.

### B.  Parties' Arguments

Through their Brief in Support of the Motion, Defendants argue they are entitled to summary judgment on all of Welsh's claims.  As to the January UOF, Defendant Vanier implies that he is not responsible for Welsh's alleged injury.  Defs.' Br. in Supp. 10, ECF No. 256 [hereinafter Defs.' Br.].  But regardless, he contends any alleged force was used to maintain or restore discipline.  *Id.* at 11–12.  Defendant Vanier also avers that Welsh suffered only "a *de minimis* injury"—i.e., "two scratches to Welsh's right ring finger."  *Id.* at 10.  According to Defendant Vanier, although Welsh alleges he suffered psychological injuries, "Welsh never sought psychiatric treatment and refused to see a mental health provider in April of 2016."  *Id.* at 10–11.  Thus, any purported use of force was reasonable and not excessive.  *Id.* at 11–12.

Defendants Dinwiddie, Gonzales, and Hernandez similarly assert that as to the November UOF, their conduct was objectively reasonable.  *Id.* at 11.  They allege that Welsh refused orders and "resisted the placement of restraints," thereby justifying some force.  *Id.*  Defendants Dinwiddie, Hernandez, and Gonzales maintain that after exiting Welsh's cell, he did not have a "visible injury to [his] face[,] contrary to his claim his eye was bruised."  *Id.*  Defendant Hernandez further argues that the video does not reflect he twisted Welsh's arm, nor is there any evidence of serious injury to his shoulder.  *Id.*  To the contrary, Welsh apparently refused an x-ray of his shoulder on November 22, 2017, despite complaining of shoulder pain.  *Id.*

Defendant Gonzales alleges that because Welsh cannot establish Defendants Dinwiddie and Hernandez used excessive force, no viable bystander liability claim exists.  *Id.* at 12.  Defendant Gonzales maintains that, as reflected by the records, his "only role was as a witness, operating a handheld camera."  *Id.*

4

Defendants also argue that Welsh's state law claims for assault, IIED, false arrest, and negligence lack merit. *Id.* at 12–15. Defendant Gonzales alleges that he did not use force during the November UOF. *Id.* at 13. And Defendants contend "Welsh has no evidence that [their] conduct was not reasonable in defense of others and/or themselves under the circumstances," thereby entitling them to summary judgment on Welsh's assault claims. *Id.*

In Defendants' view, Welsh similarly has no evidence establishing the elements of his claim for IIED. *Id.* Specifically, Defendants aver Welsh "cannot establish Gonzale[s], Hernandez, or Vanier" acted intentionally or recklessly and/or that their conduct was extreme or outrageous." *Id.* Pointing to the lack of medical records, Defendants allege Welsh cannot demonstrate "he suffered any mental distress or that any distress was severe." *Id.* at 13–14.

As to Welsh's false arrest claim, Defendant Vanier explains that he did not arrest Welsh; he merely placed him in the Secure Management Unit (SMU) at the TCCC. *Id.* at 14. In any event, Defendant Vanier states that "Welsh has no evidence that . . . Vanier was not authorized to send Welsh to SMU." *Id.* He also alleges that Welsh's failure to obey orders and the biting of another staff member during the incident justified his placement. *Id.* at 14–15. Vanier reasons that "because Welsh was indicted and pled guilty to assault for biting Cpt. Salazar's finger during the January" UOF, the independent-intermediary doctrine broke the chain of causation. *Id.* at 14–15.

Finally, Defendant Vanier avers that Welsh's negligence claim is not viable because Welsh "has not clearly articulated any legal duty of Vanier . . . and has no evidence of any breach of any duty to [Welsh]." *Id.* at 15. In Vanier's view, he acted "within his duties as an officer and, as evidenced by the records, Welsh was ultimately disciplined pursuant to TCCC policies." *Id.*

In support of their Motion, Defendants filed an appendix and seek to incorporate by reference "the factual and legal arguments made by Co-Defendant Ross Hester regarding the November" UOF, as well as Hester's summary judgment evidence, including a video of the incident. *Id.* at 2.

Welsh first objects to Defendants' summary judgment evidence. Pl.'s Opp'n Resp. 3, ECF No. 266 [hereinafter Pl.'s Resp.]. He maintains that Defendants' evidence contains "hearsay within hearsay," and, other than the videos, they have not submitted "any competent summary judgment evidence." *Id.* at 3–5. Welsh also seeks, like Defendants, to incorporate by reference Hester's "none [sic] hearsay . . . evidence." *Id.* at 2.

Turning to the January UOF, Welsh argues that Defendant Vanier used force *after* Welsh had stopped resisting. *Id.* at 15. Thus, the fact that Welsh's physical injuries were minor does not render his claim invalid. *Id.* at 15–17. Welsh further asserts that his psychological injuries satisfy the injury requirement. *Id.* at 17. Alternatively, Welsh contends that even if the Court concludes he "has not meet [sic] his burden to show injury either physical or psychological," he "is still entitle[d] to nominal damages." *Id.* at 18.

Next, Welsh alleges summary judgment is not proper as to the bystander liability claim against Defendant Gonzales. *Id.* at 19. According to Welsh, "Gonzale[s] could have intervened at anytime [sic] as he recorded Di[n]widdie and Hernandez using excessive force." *Id.*

In Welsh's view, the Court should also deny summary judgment on his state law claims. As for his assault claim, he maintains that "[t]he [c]ontract between Correct Care Recovery Solutions [(CCRS)] and the Texas Civil Commitment Office shows that [Defendants] had no lawful authority to touch [him] unless in the instances of self-defense."[4] *Id.* at 20. Welsh also

---

[4] CCRS, a private contractor, apparently operated the TCCC at the time of the events giving rise to Welsh's claims.

points to Texas Health & Safety Code § 841.038 and asserts that TCCC staff may only use handcuffs when the resident is an imminent threat to bodily injury. *Id.*

Welsh similarly references the CCRS contract to support his false arrest and negligence claims against Defendant Vanier. *Id.* at 24, 27–29. Welsh reasons that the contract did not grant Vanier lawful authority to place Welsh in the SMU, thereby resulting in a false arrest. *Id.* at 23–24. Welsh also states that the contract gave rise to a special relationship between him and Vanier. *Id.* at 27–28. And Welsh believes Vanier breached that duty when he allegedly used force. *Id.* at 27.

In addition, Welsh disputes Defendants' contention that he cannot establish an IIED claim. *Id.* at 26. He maintains that "[t]he attacking of a defenseless individual meets th[e] standard" for outrageous conduct. *Id.* Welsh also alleges that he suffered "[s]evere emotional distress" because of the January and November UOFs. *Id.* at 27. According to Welsh, he will be able to establish he suffered emotional distress through his own testimony and despite not having a medical professional to testify about his injuries. *Id.* at 30–33.

In reply, Defendants first address Welsh's evidentiary objection. Reply Br. 1, ECF No. 267 [hereinafter Defs.' Reply]. They assert that the Court should overrule his objection for four reasons: (1) Welsh "does not object that the exhibits are not capable of being presented in admissible form"; (2) he similarly does not argue "that the evidence is not trustworthy such that it should not be considered"; (3) the records fall within Fed. R. Evid. 803(6)'s exception because they supplied business records declarations; and (4) Welsh failed to identify the specific statements in the evidence that constitute hearsay within hearsay. *Id.* at 2.

Moreover, Defendants object to Welsh's declarations in support of his Response. *Id.* at 3. They argue the declarations contain hearsay, contradictory statements, and accounts "that do not appear to be within his personal knowledge and/or are conclusory." *Id.*

As to the merits of his claims, Defendants contend that Welsh has incorrectly argued the status of their authority. *Id.* Specifically, they disagree that the contract and Texas law provide that their use of handcuffs in the January and November UOFs was not permissible. *Id.* at 3–4. They also assert that Welsh has supplied no competent evidence that would preclude summary judgment on his claims. *Id.* at 4. According to Defendants, Welsh has not provided evidence that he stopped resisting before Defendants allegedly used force, nor has he adequately supported his IIED claim. *Id.* Defendants therefore urge the Court to grant summary judgment as to all of Welsh's claims. *Id.* at 4–5.

## II.    Summary Judgment Standard

When the pleadings and evidence show that no genuine issue of material fact exists, the moving party is entitled to summary judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the non-movant bears the burden of proving such material facts at trial, movants may satisfy their burden by either affirmatively showing the nonmovant's inability to establish such material facts or "merely demonstrat[ing] an absence of evidentiary support in the record for the non-movant's case." *Wesley v. Gen. Drivers,*

*Warehousemen & Helpers Loc. 745*, 660 F.3d 211, 213 (5th Cir. 2011) (quoting *Bayle v. Allstate*

*Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010)); *accord Ramirez ex rel. Ramirez v. Escajeda*, No. EP-

17-CV-00193-DCG, 2021 WL 3713064, at *3 (W.D. Tex. Aug. 20, 2021).

 In considering a summary judgment motion, courts must view all facts and inferences in

the light most favorable to the plaintiff and resolve any disputed material facts in his favor.

*Anderson*, 477 U.S. at 255; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

Nevertheless, "a [plaintiff] cannot defeat summary judgment with conclusory allegations,

unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med.*

*Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075

(5th Cir. 1994)). A plaintiff "must allege facts specifically focusing on the conduct of [the

defendant] which caused his injury." *Wicks v. Miss. State Emp. Servs.*, 41 F.3d 991, 995 (5th Cir.

1995).

 Moreover, where video evidence is available, the court may ignore a party's version of the

facts when that version is "blatantly contradicted by the record," so that no reasonable jury could

believe it. *Tucker v. City of Shreveport*, 998 F.3d 165, 170 (5th Cir. 2021) (quoting *Scott v. Harris*,

550 U.S. 372, 380 (2007)); *see Renfroe v. Parker*, 974 F.3d 594, 599–600 (5th Cir. 2020) (relying

on the "unrebutted testimony . . . supported by [dash camera] video" to establish a record even

where plaintiff claimed a genuine issue of material fact). "[A]lthough courts view evidence in the

light most favorable to the nonmoving party, they give greater weight, even at the summary

judgment stage, to the facts evident from video recordings taken at the scene." *Griggs v. Brewer*,

841 F.3d 308, 312 (5th Cir. 2016); *accord Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022)

("[W]hile viewing the evidence favorably to the nonmovant, we assign greater weight, even at the

summary judgment stage, to the video recording taken at the scene." (internal quotation marks,

alterations, and citation omitted)).    Importantly, this Court must not make credibility determinations or weigh evidence in ruling on such a motion. *Anderson*, 477 U.S. at 254–55.

### III.    Factual Evidence Before the Court

**A.  What material may the Court consider as proper summary judgment evidence?**

Defendants and Welsh each filed an appendix along with their Motion and Response, respectively (ECF Nos. 257, 266-1, 266-2), and each party objects to the other's evidence.  Pl.'s Resp. 3–5; Defs.' Reply 3.

*1.  Welsh's non-specific double hearsay objection should be overruled.*

Welsh generally objects to *all* of Defendants' evidence, except for the UOF videos, as impermissible double hearsay. Pl.'s Resp. 3–5.  Welsh does not, however, point to the specific portions of each record he believes constitute double hearsay. *See id.*; Defs.' Reply 2 (Welsh "has not specifically identified which statements in the attached records constitute hearsay within hearsay in order to properly analyze and address his objection.").

The undersigned will not disregard the entirety of Defendants' Appendix (minus the videos) because some documents may contain double hearsay.  Welsh was free to object to the specific portions of the evidence he believed were inadmissible, but he instead elected to place the burden on the Court to parse through over one hundred pages of material.  "[T]he Court is not required to, and will not, otherwise make [Welsh's] objections for" him. *Hernandez v. Trendy Collections, LLC*, No. 3:17-cv-2049-BN, 2018 WL 4103723, at *5 (N.D. Tex. Aug. 29, 2018); *see Sanchez v. Palacios*, 3:21-CV-0071-B, 2022 WL 2533410, at *4 (N.D. Tex. July 6, 2022) (overruling defendants' objections to plaintiff's affidavit, where defendants "failed to specifically object to any other portions of the affidavit or otherwise explain why the entire affidavit [wa]s incompetent"); *E.E.O.C. v. Exxon Mobile Corp.*, No. 3:06–CV–1732–K, 2012 WL 6608755, at *3 (N.D. Tex. Dec. 19, 2012) (declining to exclude experts' entire opinions where defendant failed

to, *inter alia*, "object to the specific portions of testimony that [defendant] contend[ed] [went] beyond the scope of their expertise"). The undersigned therefore recommends the district judge **OVERRULE** Welsh's generalized objections to Defendants' summary judgment evidence.

### 2. *Defendants' objections to Welsh's evidence should be overruled as moot in part and overruled on the merits in part.*

Defendants object to the following portions of Welsh's declarations as hearsay:

- Pl.'s App. 1–7 ¶¶ 4, 6, 8, 11, 13, 15, 17, 21, 24, 26, 29, 31, 37, 41, 84, ECF No. 266-1

- Pl.'s App. 8–20 ¶¶ 2, 5, 18, 23, 25, 31, 46, 49, 60, 63, 65, 66, 68, 71, 87, 88, 100.

Defs.' Reply 3. Defendants further maintain that some of Welsh's assertions in these paragraphs "do not appear to be within his personal knowledge and/or are conclusory." *Id.* (citing Pl.'s App. 1–7 ¶¶ 28, 44, 49, 53; *id.* at 8–20 ¶¶ 49, 54).

Because the undersigned has not relied on any of the foregoing declaration paragraphs in evaluating Defendants' motion, the undersigned recommends that the district judge **OVERRULE as moot** Defendants' objections. *See, e.g.*, *Berry v. Drive Casa, LLC*, No. 3:21-CV-0433-D, 2022 WL 605302, at *4 n.4 (N.D. Tex. Mar. 1, 2022); *Foster v. Target Corp.*, No. 3:20-CV-0306-B, 2021 WL 347511, at *4 (N.D. Tex. Feb. 2, 2021).

To the extent Defendants make general objections to Welsh's summary judgment evidence on other grounds (e.g., that it contradicts video evidence), those objections should also be overruled. *See* Defs.' Reply 3. Defendants' generic objections to statements in Welsh's declaration suffer from the same infirmity as Welsh's—they do not cite to specific paragraphs or statements and the Court is therefore unable to evaluate the objections. The undersigned recommends that the district judge **OVERRULE** them as well.

**B. Statement of facts alleged in the competent summary judgment evidence.**

*1. January UOF*

On January 22, 2016, Welsh refused officers' orders to go to the SMU. *See* Welsh Decl.

2–4, ECF No. 266-1 [hereinafter Welsh Decl. I]. As a result, officers used force to escort Welsh

and handcuffed him during the incident. UOF 1.22.16.mov 00:00–06:50, ECF No. 259

[hereinafter January UOF Video]. They carried Welsh into a room in the SMU and placed him on

the floor. *Id.* at 06:50–:55; Welsh Decl. I 4 ¶ 45. Welsh told Defendant Vanier that he "had a right

to say what [he] want[s]." Welsh Decl. I 4 ¶ 45. Welsh then "stopped all resistance,"[5] and the

officers did not make any further commands. *Id.* ¶ 46. As Defendant Vanier removed the cuff

from Welsh's right hand, "he took the other side of the cuffs, metal teeth and grinded it into

[Welsh's] right ring figure [sic all]." *Id.* at 5 ¶ 55. Welsh "lurched in pain, screaming as [Vanier]

grinded it into [Welsh's] figure [sic]." *Id.* ¶ 56.

Defendant Vanier then removed the left cuff, and all officers left Welsh's room. *Id.* ¶¶ 61,

62; January UOF Video 09:30–:48. Welsh realized his "right ring finger was dripping blood" due

to a "shallow cut." Welsh Decl. I 5 ¶¶ 64, 65. TCCC medical staff performed an assessment of

Welsh after the incident. Defs.' App. 128. Staff observed "x 2 S/T to 4th inner digit [on] [right]

hand." *Id.* Welsh "denie[d] any pain or any complications." *Id.*; *see* Welsh Decl. I 5 ¶ 67. Staff

cleaned the injury with "wound cleanser," "applied Neosporin," and covered it with two band-

aids. Defs.' App. 128; *see* Welsh Decl. I 5 ¶ 67. Welsh generally avers he experienced pain after

the incident, but he does not specify the location. Welsh Decl. I 5 ¶ 67. The medical records

reflect that on January 25, 2016, Welsh presented to the medical department complaining only of

---

[5] An incident report written by Anthony L. Clasen Jr. states that Welsh "started to refuse the restraints being removed."
Defs.' App. 29. Assuming Defendants can present this statement in an admissible form at trial or that it falls within
an exception under FED. R. EVID. 803, Clasen's statement creates a fact dispute the Court cannot resolve on summary
judgment, primarily because the video footage does not clearly refute Welsh's version of the facts.

"back pain." Defs.' App. 126. Staff prescribed 500 mg naproxen, which Welsh took "for about 10 days." *Id.*; Welsh Decl. I 5 ¶ 67. Because of this incident, Welsh suffered nightmares, anxiousness, panic attacks, headaches, depression, and a disruption of his daily activities. *See* Welsh Decl. I 6. TCCC staff did not offer "to have . . . [Welsh] evaluated by a psychiatrist or psychologist" (*id.* at 7 ¶ 87), and Welsh did not seek treatment. Welsh Decl. 22 ¶ 9, ECF No. 266-1 [hereinafter Welsh Decl. III].

### 2. November UOF

On November 13, 2017, Welsh refused to enter his cell, sitting down "in front of Alpha 109 cell to protest the [facility's] conditions." Welsh Decl. II 9 ¶ 3, ECF No. 266-1 [hereinafter Welsh Decl. II]; Hester App. Ex. U 0:07–3:22, ECF No. 175; *see* Defs.' App. 66.[6] Because Welsh refused to obey orders to return to his housing area, TCCC officers used force to gain compliance and applied hand and leg restraints. *See, e.g.*, Defs.' App. 66, 78; Hester App. Ex. U 0:16–:20; Welsh Decl. II 9–10; *see also* Hester App. Ex. U 1:01–3:58 (showing that Welsh sat on the floor, refused to comply with orders to return to his room (including by placing his fingers in his ears and yelling at TCCC Security Director Chris Woods, "I can't hear you, sir," and telling officers "you're not touching me" and "get your hands off me b**ch")), 3:53–10:48 (demonstrating that officers physically moved Welsh to a room). Officers escorted Welsh to his room, where they "placed [him] on the ground, on [his] belly." Welsh Decl. II 10 ¶ 12–13; Hester App. Ex. U 6:36–7:13.

Director Woods advised Welsh that if he did not comply with orders, officers would again use force. Hester App. Ex. U 6:36–:57. Officers then removed the leg restraints without incident.

---

[6] Welsh's declaration states that the incident occurred September 13. Welsh Decl. II 9 ¶ 2. In his Amended Complaint, however, Welsh identifies November 13 as the date of the incident. Am. Compl. 56. Defendants' summary judgment evidence similarly reflects November 13 as the relevant date. *See, e.g.*, Defs.' App. 62–65; Hester App. Ex. U 00:16–:20, ECF No. 175. The Court therefore uses the November 13 date.

*Id.* at 6:57–7:13. Director Woods advised Welsh that when officers removed the handcuffs, Welsh

needed to keep his hands behind his back. *Id.* at 7:14–7:40. After officers removed the left cuff,

Welsh took his right hand—which was still cuffed—"and placed it underneath [his] body, pinning

the arm with the hand restraints between [his] body and the ground." Welsh Decl. II 10 ¶ 14;

Hester App. Ex. U 7:14–7:40.[7] Director Woods cautioned Welsh that he was in possession of a

weapon and ordered him to relinquish the right cuff and comply with staff directives. Hester App.

Ex. U 7:14–7:40. Because Welsh was non-compliant, officers placed the leg restraints back on

Welsh's ankles. Hester App. Ex. U 7:40–7:52.

Welsh was "unable to move as [Defendant] Hernandez placed a lot of pressure on [his]

body keeping [his] hand in place." Welsh Decl. II 12 ¶ 26. In response, Defendant Hernandez

"took [Welsh's] left arm [and] pulled it straight[,] . . . lifting it up over [Welsh's] head."[8] *Id.* ¶ 27;

*see* Suppl. Am. Compl. 8;[9] *see also* Suppl. Am. Compl. 8 (claiming that Defendant Hernandez

pulled his arm at about the 8:03 mark of the video). "This pulled [Welsh's] arm out of [the] socket"

and caused "sever[e] pain." Welsh Decl. II 12 ¶¶ 28, 29.[10] Officers yelled at Welsh to quit

---

[7] Welsh explains that he disobeyed orders and placed his right hand under his body "solely for the purpose of passive resistant protest [and] to cause security to have to continue to work on securing [him]." Welsh Decl. II 10 ¶ 15. Welsh's attempt to classify his action as "passive" resistance is an improper legal conclusion and the Court disregards it. Moreover, Welsh's action does not constitute passive resistance. *See, e.g., Griggs*, 841 F.3d at 315 (characterizing intoxicated plaintiff's actions as active resistance, where plaintiff "ignore[ed] the officers' commands, again pulled away and again tucked his arms back under him," after officer had punched plaintiff in an attempt to gain control of his arms).

[8] Welsh's declaration states that both Defendants Hernandez and Dinwiddie pulled his arm. Welsh Decl. II 12 ¶ 27. Welsh did not assert this allegation against Dinwiddie in his pleadings, and the Court will not consider this allegation. *See* Am. Compl. 57 ("Hernandez . . . attempt[ed] to break [Welsh's] arm, by twisting [it] . . . straight forcing it up at odd angles [sic all].");　Suppl. Am. Compl. 8–9 ¶¶ 19–20.

[9] Welsh's Amended Complaint is not verified, but his Supplemental Amended Complaint was signed under penalty of perjury. The Court may therefore treat the allegations in the Supplemental Amended Complaint as though they were contained in an affidavit. *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit.").

[10] Welsh's declaration is contradictory. He states that before Defendant Hernandez's alleged action, he "gave up all passive resistance," "surrender[ed] [his] right arm," and also "verbally surrender[ed]." Welsh Decl. II 11 ¶¶ 20–21, 24; *see* Hester App. Ex. U 7:52–8:02 (yelling "take the cuffs" several times). Welsh further attests, however, that his arm remained under his body because of Defendant Hernandez placing weight on him. *Id.* at 12 ¶ 26. The Court does

resisting, and Welsh responded by calling Director Woods a "lying b\*\*ch several times." *Id.* ¶ 33; Hester App. Ex. U 8:02–8:45. As officers removed the other handcuff, Defendant Dinwiddie "slammed [Welsh's] head and face into the floor several times." Welsh Decl. 12 ¶ 34. Officers ordered Welsh to "quit resisting again as Di[n]widdie continued to slam [his] head on the floor." *Id.* ¶ 35; *see* Suppl. Am. Compl. 8 (contending that Defendant Dinwiddie slammed his head into the concrete at about the 8:45 mark on the video).[11]

Officers were ultimately able to remove the hand and leg restraints. Hester App. Ex. U 8:40–9:01. As officers tried to exit the room, Welsh once again disobeyed orders by sitting up, prompting the officers to reengage. *Id.* at 9:01–10:45; Welsh Decl II 13 ¶ 37. He does not, however, maintain that officers used unconstitutional force after that point. *See* Welsh Decl. II 13 ¶¶ 37–38; *see* Suppl. Am. Compl. 8–9.

After physically placing Welsh in his room, officers secured the door at around 7:22 a.m. and left the area. Hester App. Ex. U 10:45–11:03 (Woods stated on video that officers concluded using force at about 7:22 a.m.). The video reflects that when the officers closed the door, Welsh was sitting upright on the floor. *Id.* at 10:50–:53. Welsh is visible through the glass window; there are no apparent injuries to his face. *Id.* at 10:53–11:12. Welsh, however, contends that as result of Hernandez's and Dinwiddie's actions, he suffered bruising, knots, swelling, and scrapes on his

---

not consider Welsh's contradictory allegations that he both "surrender[ed] [his] right arm" and that he could not surrender it due to Hernandez's weight. *See, e.g., Cooper Cameron Corp. v. U.S. Dep't of Lab., Occupational Safety & Health Admin.*, 280 F.3d 539, 550 (5th Cir. 2002) (holding district court erred by considering statements in "an internally inconsistent, self-contradictory affidavit"); *De Luna v. Fed. Nat'l Mortg. Ass'n*, No. M–11–319, 2012 WL 13042511, at \*2 (S.D. Tex. Aug. 13, 2012) ("While the [c]ourt may consider unchallenged evidence even if not properly authenticated, it will not do so when the unchallenged evidence is internally inconsistent."). Excluding these statements, the evidence shows that Welsh tucked his right hand under his body, where it remained until officers were able to free it and remove the cuffs. *See id.* at 11–12.

[11] Welsh's Supplemental Amended Complaint is both internally contradictory and conflicts with statements in his declaration. In the Supplemental Amended Complaint, Welsh says that Defendant Dinwiddie slammed his head into the concrete and then "[l]ater [Defendant] Hernandez" twisted his left arm. Suppl. Am. Compl. 8. The time stamps to which Welsh references, however, indicate that Hernandez used force before Dinwiddie. *Id.* Welsh's declaration likewise reflects that Defendant Hernandez applied force before Defendant Dinwiddie. Welsh Decl. II 12.

face, as well as pain in his face and left arm. *See* Welsh Decl. II 13 ¶¶ 38, 39, 42, 43; *see* Defs.'

App 96 (stating that on Nov. 14, 2017, mental health nurse observed bruise to Welsh's right eye),

106 (noting "minimal edema" and green/purple bruise to right eye on November 20), 108

(complaining of left shoulder pain and nurse observed restrict range of motion around 9:00 pm on

November 15), 109 (Welsh complained of headache and pain rated 8/10, for which nurse

administered ibuprofen around 11:30 am on November 15.), 111 (At 9:48 am on November 14,

nurse examined Welsh and observed limited range of motion to left arm, raised purple area on

right eye "approximately 3 fingers in width," and no abrasions, redness, or edema. Welsh

complained of pain, "nauseous[ness] and headache."), 112 (At 9:50 am on November 13, nurse

performed visual examination of Welsh and observed edema and bruising near both eyes,

abrasions to forehead, and "[s]mall, raised contusions . . . to left upper forehead." Welsh stated he

could not move his left shoulder.), 113 (Around 7:30 am on November 13, nurse performed visual

inspection and saw edema below Welsh's right eye, abrasions to forehead below hairline, and no

scratches or abrasions to fists and arms.). Welsh also "believe[s] [he] had a concussion" but the

medical records contain no such diagnosis. Welsh Decl. II 13 ¶ 44.

Welsh avers that beginning around 7:35 a.m.—i.e., thirteen minutes after being placed in

the room—"staff placed a camera in front of [his] door." *Id.* at 15 ¶ 55; *see* Hester App. Ex. V

0:46–:51 (showing a camera on a tripod outside Welsh's room). TCCC staff also sat in front of

Welsh's door and kept "an observation log." Welsh Decl. II 15 ¶ 55; *see* Pl.'s App. 117–53, ECF

No. 266-2. Welsh observed the camera's red recording light, and "[s]taff periodically either

checked the memory or replaced the memory flash drive while [Welsh] was in the cell." Welsh

Decl. II 15 ¶ 56–57.

Welsh reportedly wanted to lodge a criminal complaint as a result of the UOF, so Woods called Littlefield Police Department's Chief of Police Ross Hester, who came to the facility around 2:00 p.m. on November 13. Defs.' App. 68; Hester App. Ex. V 00:00–1:54; *see* Welsh Decl. II 15 ¶ 58 (acknowledging that he talked to Hester the afternoon of November 13 and the meeting was recorded). After reviewing the use-of-force video, TCCC staff and resident reports and statements, and speaking with Welsh, Hester determined that Welsh had physically injured himself and then falsely reported that TCCC staff injured him. Welsh, however, denies striking himself "or caus[ing] any injuries to [him]self." Welsh. Decl. II 14 ¶ 47.

Ultimately, the State criminally prosecuted Welsh based on Hester's conclusion. A criminal jury trial ensued, and a jury found Welsh guilty of the offense of tampering with or fabricating physical evidence in violation of TEX. PENAL CODE § 37.09(a)(2). *See Welsh*, 570 S.W.3d at 964 & n.1. Welsh appealed the jury verdict, and the Seventh Court of Appeals of Texas subsequently reversed the conviction. *Id.* at 967–68. The state court of appeals held that there was not sufficient evidence to support the jury's verdict because even though Welsh conveyed false information, he did not make, present, or use physical evidence "with knowledge of its falsity" in violation of § 37.09. *Id.*

## IV.   Discussion

Defendants move for summary judgment as to each of Welsh's claims: (1) January UOF against Defendant Vanier; (2) November UOF against Defendants Hernandez, Gonzales, and Dinwiddie; (3) bystander liability against Defendant Hernandez based on the November UOF; (4) state law assault against Defendants Vanier, Gonzales, and Hernandez; (5) state law IIED against Defendants Vanier, Gonzales, and Hernandez; (6) state law false arrest against Defendant

Vanier; and (7) state law negligence against Defendant Vanier. The undersigned addresses each claim in turn.

### A. Defendant Vanier is not entitled to summary judgment on Welsh's January UOF claim.

Welsh maintains that as Defendant Vanier removed the handcuffs during the January UOF, Vanier ground the cuff into Welsh's right ring finger.[12] Welsh Decl. I 5 ¶ 55. Welsh asserts Defendant Vanier's action took place after he was subdued and no longer resisting. *Id.* at 4 ¶ 46; *see Welsh*, 845 F. App'x at 316 (holding that Welsh's Amended Complaint, "fairly read, . . . alleges that Vanier's use of excessive force occurred . . . after Welsh had been subdued, shackled, and transported to the isolation cell"). The video footage does not clearly refute Welsh's allegation. After officers left his room, Welsh realized his "right ring finger was dripping blood" due to a "shallow cut." Welsh Decl. I 5 ¶¶ 64–65. The evidence shows TCCC medical staff cleaned the injury with "wound cleanser," "applied Neosporin," and covered it with two band-aids. Defs.' App. 128; *see* Welsh Decl. I 5 ¶ 67.

The Fifth Circuit has not considered the appropriate constitutional standard applicable to a § 1983 excessive force claim brought by a civilly committed SVP. In *Andrews v. Neer*, however, the Eighth Circuit examined the issue, and concluded that an involuntarily committed person's "excessive-force claim should be evaluated under the objective reasonableness standard usually applied to excessive-force claims brought by pretrial detainees." 253 F.3d 1052, 1061 (8th Cir. 2001). In so concluding, the court explained the following:

> The Eighth Amendment excessive-force standard [(typically used to analyze prisoner excessive force claims)] provides too little protection to a person whom the state is not allowed to punish. On the other hand, the state of Missouri was entitled to hold [plaintiff] in custody. His confinement in a state institution raised

---

[12] This is the only claim before the Court. *See* Am. Compl. 5. The undersigned has not considered Welsh's references to other potential uses of force—e.g., Defendant Vanier's purported "turn[ing]" of the cuffs into Welsh's wrists, causing him pain—raised for the first time in his declaration. Welsh Decl. I 4–5.

> concerns similar to those raised by the housing of pretrial detainees, such as the legitimate institutional interest in the safety and security of guards and other individuals in the facility, order within the facility, and the efficiency of the facility's operations.

*Id.*; *see also Davis v. Rennie*, 264 F.3d 86, 108 (1st Cir. 2001) (agreeing with Eighth Circuit and concluding "that the usual standard for an excessive force claim brought by an involuntarily committed mental patient is whether the force used was 'objectively reasonable' under all the circumstances"). The undersigned finds the Eighth Circuit's reasoning instructive and will likewise apply an objective reasonableness standard—the same standard applicable to pretrial detainees. *See also Welsh*, 845 F. App'x at 317 (applying pretrial detainee standard to Welsh's force claims, where "Welsh d[id] not contest th[at] standard"); Pl.'s Resp. 14 (arguing that under any standard, Defendants' conduct violated the Constitution).

The United States Supreme Court has recognized that a pretrial detainee's use of force claim arises under the Fourteenth Amendment. *See Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015) (abrogating lower courts' application of Eighth Amendment excessive force standards in *Hudson v. McMillian*, 503 U.S. 1 (1992) to pretrial detainees). To sufficiently state an excessive force claim "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396–97. "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The reasonableness of the force used must be assessed "from the perspective and with the knowledge of the defendant officer" and with "deference to policies and practices needed to maintain order and institutional security." *Id.* at 399–400. In determining the objective reasonableness of an officer's use of force, a court should consider the following non-exclusive factors: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the

amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably

perceived by the officer; and (6) whether the plaintiff was actively resisting. *Id.* at 397.

Defendant Vanier seeks summary judgment on this claim for two reasons: (1) his use of

force was reasonable under the circumstances; and (2) Welsh suffered only *de minimis* injury.[13]

Defs.' Br. 10–11.

The undersigned concludes that viewing the facts in a light most favorable to Welsh, there

remains a factual dispute over whether Defendant Vanier's conduct was reasonable under the

circumstances. Welsh concedes, and the video evidence shows, that he resisted and disobeyed

orders before Defendant Vanier's alleged force. *See* Welsh Decl. I 2–4; January UOF Video

00:00–9:30. According to Welsh, however, it was after he "stopped all resistance" that Defendant

Vanier ground the cuffs into his right finger. Welsh Decl. I 4–5 ¶¶ 46, 47, 55. The video footage

does not clearly refute his version of the facts. January UOF Video 6:30–9:30. For these reasons,

the first, third, fourth, fifth, and sixth *Kingsley* factors (i.e., the relationship between the need for

the use of force and the amount of force used, any effort made by the officer to temper or limit the

amount of force, the threat to institutional order reasonably perceived by the officer, the severity

of the security problem at issue, and plaintiff's active resistance) weigh in Welsh's favor. *See,

e.g.*, *Williams v. City of Houston*, No. H-16-3342, 2019 WL 2435854, at *10 (S.D. Tex. June 11,

2019) (denying officer's summary judgment motion where although "summary judgment evidence

show[ed] that [detainee] had earlier resisted arrest and [a] blood test, that resistance could not

---

[13] Vanier also implies that he is not responsible for the conduct alleged. *See* Defs.' Br. 4 (stating that "the hand restraints were removed" but failing to identify the individual responsible for doing so), 10 (making the confusing argument that although Welsh contends Vanier injured him while removing the cuffs, "the records establish that Cpt. Salazar *placed* the hand restraints on Welsh" (emphasis added)). The records Defendant Vanier cites are silent on who removed the cuffs. *See* Defs.' App. 22 ("Once in SMU [resident] Welsh was placed on the floor . . . and the mechanical hand restraints were removed."); January UOF Video 07:00–9:45 (generally showing that officers removed the cuffs but not clearly reflecting who did so). Because the video evidence does not clearly establish that Vanier is not responsible for the conduct alleged, the undersigned does not consider Vanier's implied assertion.

justify [officer's] later use of force if resistance had ceased," and thus determining there remained a factual dispute over "whether the force used was reasonably necessary to restrain [detainee]"); *see also Quintanilla v. Araiza*, No. SA-20-CV-00927-XR, 2021 WL 2019204, at *6–7 (W.D. Tex. May 20, 2021) (denying defendants' motion to dismiss detainee's excessive force claim despite minimal injury, where detainee plausibly alleged that defendants gratuitously used force on "a handcuffed and unresisting detainee during an escort inside the jail that resulted in injuries").

The second *Kingsley* factor, on the other hand, heavily favors Defendant Vanier. Welsh's "shallow cut" is a minor injury. *See, e.g.*, *Westfall v. Luna*, 903 F.3d 534, 549 (5th Cir. 2018) ("This court has held the following types of injuries to be *de minimis*: abrasions, back and neck pain, and contusions."); *Young v. Saint*, No. 92-8420, 1993 WL 117991, at *1–3 (5th Cir. Mar. 31, 1993) (agreeing with district court that "two small 'scratches'" that bled, resulting in nurse cleaning, applying "antibiotic ointment and a band-aid" constituted *de minimis* injury). "Nevertheless, the injury requirement is a sliding scale, not a hard cutoff." *Buehler v. Dear*, 27 F.4th 969, 982 (5th Cir. 2022). "Any force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only." *Byrd v. Cornelius*, 52 F.4th 265, 274 (5th Cir. 2022) (quoting *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017)). Thus, "as long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Buehler*, 27 F.4th at 982 (quoting *Alexander*, 854 F.3d at 309).

Here, Welsh not only suffered a "shallow cut" but also claims to have experienced psychological injury. Welsh Decl. I 5–6. Welsh's injuries, which he contends resulted from Defendant Vanier's use of force after he stopped resisting, "are not so minor that his excessive-

21

force claim necessarily fails as a matter of law." *Buehler*, 27 F.4th at 982. "[T]he force calculus changes substantially once [an individual's] resistance ends." *Curran v. Aleshire*, 800 F.3d 656, 661 (5th Cir. 2015). And using force on a compliant, non-resisting individual can violate the Constitution. *See, e.g.*, *Preston v. Hicks*, 721 F. App'x 342, 345 (5th Cir. 2018) (per curiam) (stating in the Eighth Amendment context that "[o]nce a prisoner has been subdued, using gratuitous force on him is unreasonable"); *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016) ("[C]ourts have frequently found constitutional violations in cases where a restrained or subdued person is subjected to the use of force." (citation omitted)).

At this point, factual disputes remain as to whether Defendant Vanier engaged in the alleged conduct and, if so, whether such force was objectively reasonable. *See, e.g.*, *Brooks v. Taylor Cnty.*, No. 1:20-CV-049-H, 2021 WL 4458380, at *13–14 (N.D. Tex. Sept. 29, 2021) (denying summary judgment on excessive force claim where "there [wa]s a genuine dispute of material fact as to whether the force used became excessive or unreasonable once the need for force had abated and [plaintiff] was restrained"); *Williams*, 2019 WL 2435854, at *10 (denying officer's summary judgment motion where although "evidence show[ed] that [detainee] had earlier resisted arrest . . . , that resistance could not justify [officer's] later use of force if resistance had ceased," and there remained a factual dispute about "whether the force used was reasonably necessary to restrain [detainee]"). The undersigned therefore recommends the district judge deny summary judgment on this claim.

### B. Defendant Dinwiddie is not entitled to summary judgment on Welsh's November UOF claim, but the district judge should grant summary judgment to Defendants Hernandez and Gonzales.

Welsh asserts that on November 13, 2017, Defendant Hernandez "attempt[ed] to break [Welsh's left] arm, by twisting [it] . . . straight forcing it up at odd angles [sic all]." Am. Compl. 56–57; *see* Suppl. Am. Compl. 8–9 ¶¶ 19–20. Hernandez's action allegedly "pulled [Welsh's] arm

out of [the] socket." Welsh Decl. II 12 ¶ 28; *see* Suppl. Am. Compl. 8 ¶ 19 ("Hernandez did take Welsh's left arm [and] straighten it, twisted it, then lift[ed] it until it popped out of his shoulder socket-joint causing extreme pain."). In addition, Welsh maintains that Defendant Dinwiddie slammed his head and face into the concrete floor. Welsh Decl. II 12 ¶¶ 34–35; Suppl. Am. Compl. 8. Welsh does not aver Defendant Gonzales used force but instead was present and did not stop the purported force. *See* Suppl. Am. Compl. 7–10. Defendants move for summary judgment on Welsh's claims, arguing that Welsh "cannot establish their conduct was objectively unreasonable." Defs.' Br. 11. The undersigned considers Welsh's claims against each Defendant below.

### 1. *Defendant Gonzales*

Welsh asserts an excessive force claim against Defendant Gonzales. Am. Compl. 57–58. But Welsh does not allege any facts showing, nor does he submit any evidence demonstrating, that Defendant Gonzales used force during the November UOF incident. *See* Am. Compl. 56–57; Suppl. Am. Compl. 7–9; Welsh Decl. II 9–13. As such, Defendant Gonzales is entitled to summary judgment on Welsh's excessive force claim. *See, e.g.*, *Velazquez v. City of Westwego*, 531 F. Supp. 3d 1142, 1154 (E.D. La. 2021) (finding arrestee's failure to plead facts showing defendants used "*any force* . . . to arrest her" demanded dismissal of her excessive force claim); *Tilley v. Gonzalez*, No. 3:09–CV–2451–L–BH, 2010 WL 4722216, at \*4 (N.D. Tex. Oct. 27, 2010) (concluding summary judgment was appropriate on plaintiff's excessive force claim against defendant, where plaintiff did "not provide[] any evidence showing that [defendant] used any force against him, much less that the officer maliciously and sadistically used force against him to cause harm"), *R. & R. adopted by* 2010 WL 4722469 (N.D. Tex. Nov. 22, 2010).

### 2. *Defendant Hernandez*

Welsh's evidence reflects that after he disobeyed orders by tucking his right arm under his body, Defendant Hernandez pulled his left arm straight, "lifting it up over [his] head" and "pull[ing] [his] arm out of [the] socket." Welsh Decl. II 10, 12. Welsh avers that Defendant Hernandez did this at around the 8:06 mark of the video. Suppl. Am. Compl. 8. The video further reflects that officers did not successfully remove the handcuffs until around the 8:55 mark, at which point someone ordered Welsh to keep his hands behind his back. Hester App. Ex. U 8:55–9:01. Welsh presents no evidence that before officers removed the cuffs he placed *both* hands behind his back as directed. *See* Welsh Decl. II 10–12. He merely states that he orally surrendered.[14] *See id.* at 11–12. Taken together, the evidence reflects the following timeline: (1) Welsh disobeyed orders by withdrawing his right arm, which was still cuffed, under his body; (2) Welsh verbally surrendered but maintained his right arm under his body; (3) Defendant Hernandez pulled Welsh's left arm; and (4) officers removed the cuffs. The undersigned considers the *Kingsley* factors within the context of this timeline.

The first, third, fourth, fifth, and sixth *Kingsley* factors (i.e., the relationship between the need for the use of force and the amount of force used, any effort made by the officer to temper that force, the severity of the security problem at issue, the threat reasonably perceived by officers, and plaintiff's active resistance) weigh heavily in Defendant Hernandez's favor. The video footage reflects, and Welsh concedes, that he disobeyed multiple orders, including the initial directives to return to his room and then to maintain his hands behind his back as officers began removing the cuffs. Hester App. Ex. U 0:00–8:20. After Welsh pulled his right arm under his

---

[14] As explained above, the Court does not consider Welsh's internally contradictory statements that he both "surrender[ed] [his] right arm" and that his right arm remained under his body. Welsh Decl. II 11–12; *supra* note 10. Thus, the evidence reflects that Welsh initially placed his right arm under his body, where it remained until officers used force and were able to remove the cuff. *See* Welsh Decl. II 11–12.

body, Director Woods cautioned Welsh that he was in possession of a weapon and ordered Welsh to relinquish the cuffs and comply with staff directives. *Id.* at 7:14–7:40. Because Welsh was non-compliant, officers placed the leg restraints back on Welsh's ankles. *Id.* at 7:40–7:52. Director Woods continued to order Welsh to "let go of the handcuffs," and he did not do so until after Defendant Hernandez applied force. *Id.* at 7:52–8:16; *see* Welsh Decl. II 11–12.

In sum, the evidence shows that Welsh repeatedly disobeyed orders, actively thwarted the officers' attempts to remove the handcuffs, and refused to relinquish the cuffs. Director Woods gave Welsh multiple verbal commands and, when that proved unsuccessful Defendant Hernandez apparently pulled Welsh's left arm, which had already been uncuffed. These facts support a finding that Defendant Hernandez's force was reasonable. *See, e.g.*, *Sanchez v. Griffis*, 569 F. Supp. 3d 496, 511–12 (W.D. Tex. 2021) (finding first, third, fourth, fifth, and sixth *Kingsley* factors favored defendants, where summary judgment evidence showed plaintiff refused verbal orders, walked away from defendants, and rebuffed defendants' attempts to handcuff him); *Rios v. McBain*, No. 504CV84, 2005 WL 1026192, at *7 (E.D. Tex. Apr. 28, 2005) (rejecting plaintiff's argument that he did not pose a security threat where "he refused to relinquish the handcuffs, in contravention of repeated orders to do so," and "also physically resisted attempts by the officers to retrieve the handcuffs," as "[s]uch open defiance of orders plainly poses a threat to the security of the institution, regardless of whether or not the defiance is emanating from within a locked cell").

In contrast, the second *Kingsley* factor (i.e., the extent of plaintiff's injury) favors Welsh. Welsh attests that Defendant Hernandez pulled Welsh's arm out of the socket, which "caused [him] intense pain for several weeks" and for which he "took Tylenol or ibuprofen." Welsh Decl. II 12 ¶¶ 27–28, 13 ¶ 38, 17 ¶ 74; *see* Defs.' App. 108, 111, 112. Welsh maintains that he "still ha[s]

less than full mobility in [his left arm] today as compared to how it use[d] to move." Welsh Decl.
II 13 ¶ 41. In addition, Welsh contends he experienced psychological injury. *See id.* at 18–19.
Welsh presents no evidence, however, showing that he received medical treatment specifically for
his shoulder (other than taking over-the-counter pain reliever) or his claimed psychological injury.
*See id.* at 12–19; *see also* Defs.' App. 102–03 (reflecting that Welsh refused an x-ray of his left
shoulder); Welsh Decl. II 15–17 (explaining his refusal to obtain an x-ray).

Weighing the factors set forth in *Kingsley*—particularly the severity of the security threat
(repeated disregard of orders and possessing handcuffs) and the officers' measured and ascending
actions beginning with verbal orders—requires the conclusion that Defendant Hernandez's force
was reasonable under the circumstances. *See, e.g.*, *Esparaza v. Kuykendall*, No. 9:17-CV-45, 2020
WL 1515751, at *4 (E.D. Tex. Mar. 30, 2020) (concluding defendants did not use excessive force,
where plaintiff repeatedly disobeyed "orders to relinquish the hand restraints" and "forcibly
resist[ed] the extraction team," causing defendants to choose "between allowing an inmate to retain
restraints to use as a weapon or using force to subdue [p]laintiff and retrieve the hand restraints");
*Enriquez v. TDCJ*, No. H-15-3072, 2017 WL 1184339, at *6 (S.D. Tex. Mar. 29, 2017) ("The use
of force was the result of plaintiff's deliberate refusals to return a potential weapon[, i.e., the
handcuffs,] to the officers and to obey direct orders."). Accordingly, the undersigned recommends
the district judge grant summary judgment on Welsh's excessive force claim against Defendant
Hernandez.

### 3. Defendant Dinwiddie

Welsh's claim against Defendant Dinwiddie presents a closer call. As to Defendant
Dinwiddie's conduct, the summary judgment evidence supports the following timeline of events:
(1) Welsh disobeyed orders by drawing his right arm, which was still cuffed, under his body;

(2) Welsh "orally surrendered" but maintained his right arm under his body; and (3) as officers removed the cuffs, Defendant "Di[n]widdie slammed [Welsh's] head and face into the floor several times" and continued to do so as "officers . . . yell[ed] to quit resisting." Welsh Decl. II 10–12; *see* Hester App. Ex. U 6:36–9:01.

The fifth and sixth *Kingsley* factors (i.e., the severity of the security problem at issue and the threat reasonably perceived by officers and plaintiff's active resistance) weigh in Defendant Dinwiddie's favor. The video footage reflects, and Welsh concedes, that he disobeyed multiple orders, including the initial directives to return to his room and then to maintain his hands behind his back once officers began removing the cuffs. Hester App. Ex. U 0:00–8:20. After Welsh pulled his right arm under his body, it took up to five officers approximately one-and-a-half minutes to successfully retrieve the cuffs. *Id.* at 7:20–8:58. Defendant Dinwiddie used force as officers removed the cuffs. Welsh Decl. II 12 ¶ 34–35. Thus, a reasonable officer could believe some force was necessary based on Welsh's persistent non-compliance and his possession of the handcuffs. *See, e.g.*, *Sanchez*, 569 F. Supp. 3d at 511–12.

Conversely, the first, second, third, and fourth *Kingsley* factors (i.e., the relationship between the need for force and the amount of force used, the extent of plaintiff's injury, any effort to temper the force used, and the severity of the security issue) weigh in Welsh's favor. Welsh's declaration indicates that Defendant Dinwiddie used force "[a]s the cuffs were removed" and "continued" doing so, though the timing of the force in relation to removal of the cuffs is unclear. Welsh Decl. II 12 ¶¶ 34–35. In support of his assertion that any force used was reasonable, Defendant Dinwiddie relies on this Court's prior factual finding that "when the officers exit[ed] [Welsh's] cell, there [was] no visible injury to [his] face," as well as the argument that Welsh

refused orders.[15] Defs.' Br. 11 (citing ECF No. 195, at 16). But Defendant Dinwiddie (nor any of the Defendants, for that matter) has not provided a declaration concerning the events, including whether he used force and the timing of any force in relation to Welsh's purported refusal to follow orders. Moreover, the mere fact that the video does not show bruising on Welsh's face immediately after the incident does not plainly refute Welsh's allegation that Dinwiddie used excessive force. Construing the summary judgment evidence in the non-movant's favor, as the Court must, the evidence reflects that Defendant Dinwiddie used force at a time when the officers had subdued Welsh to the extent they felt comfortable removing the cuffs.

Welsh attests that because of Defendant Dinwiddie's action, he suffered bruising, scrapes, knots, pain, and a suspected concussion. Welsh Decl. II 13 ¶¶ 38–39, 42–44 13 ¶ 38, 17 ¶ 74; *see* Defs.' App. 96, 106, 108, 109, 111–13. He took over-the-counter pain reliever "for several weeks afterward[] for" the head pain. Welsh Decl. II 17 ¶ 74; *see* Defs.' App. 107–09. He also experienced psychological injury. *See* Welsh Decl. II 17–19. Welsh presents no evidence, however, showing that he received particular medical treatment for the injuries to his head/face (other than taking over-the-counter pain reliever) or his psychological injury. *See id.* at 12–19. Still, his injuries suggest that the amount of force Defendant Dinwiddie used was not reasonable in relation to the need, particularly where the timing is undetermined in relation to Welsh's resistance. *See Bailey v. Ramos*, 657 F. Supp. 3d 927, 953 (W.D. Tex. 2023) (concluding plaintiff's injuries—abrasions, "acute neck pain, and a concussion"—along with evidence that

---

[15] Defendant Dinwiddie's argument focuses on Welsh's conduct prior to officers moving him to a cell—i.e., Welsh's initial refusal to return to his cell justified the use of force. Defs.' Br. 11. This argument ignores the crux of the issue. An initially justifiable use of force may become unreasonable after the need for force abates. *See, e.g., Brooks*, 2021 WL 4458380, at *13–14. Defendant Dinwiddie does not argue, much less provide evidence thereof, about the timing of any force in relation to retrieval of the cuffs. As such, there remains a fact issue as to whether Defendant Dinwiddie's use of force, which he allegedly employed *after* officers had placed Welsh in the cell and were removing the cuffs, was reasonable.

physician prescribed pain medication and testimony that he still experiences pain was "sufficient to create a fact issue as to whether he suffered more than a de minimis injury").

After reviewing the *Kingsley* factors, the undersigned concludes a fact issue remains as to the amount of force Defendant Dinwiddie used and whether that force was objectively reasonable. *See, e.g.*, *Brooks*, 2021 WL 4458380, at *13–14; *Williams*, 2019 WL 2435854, at *10. The undersigned therefore recommends the district judge deny summary judgment as to Welsh's excessive force claim against Defendant Dinwiddie.

### C. Defendant Gonzales is entitled to summary judgment on Welsh's bystander liability claim.

Welsh asserts that during the November UOF, Defendant Gonzales failed to intervene and "prevent Di[n]widdie and . . . Hernandez [from] us[ing] . . . excessive force." Suppl. Am. Compl. 9; *see id.* at 10, 17. Other than this general allegation invoking a bystander liability claim, Welsh presents no evidence on the factual underpinnings of his claim. *See* Welsh Decl. II 1–20 (failing to mention Defendant Gonzales even one time); Suppl. Am. Comp. 9–10, 17.

An official's failure to intervene in another's use of excessive force against an arrestee may violate the Constitution and subject the official to § 1983 liability. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). To prevail on a bystander liability claim, a plaintiff must establish that an officer: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017) (citation omitted).

To the extent Welsh contends that Defendant Gonzales should have intervened in Defendant Hernandez's use of force, Welsh cannot state a claim. This is because there cannot be a viable bystander liability claim without an underlying constitutional violation. *See Buehler*, 27 F.4th at 989 (stating that "[b]ystander liability arises only where the plaintiff can allege and prove

another officer's use of excessive force" (alteration in original) (citation omitted)); *Griffin v. City of Sugarland*, 787 F. App'x 244, 245 (5th Cir. 2019) (per curiam) ("Because his excessive force claim fails because there was no violation of his constitutional rights, [plaintiff's] bystander liability theory also fails.").

As to any claim based on Defendant Dinwiddie's purported force, Welsh has failed to present any evidence that Defendant Gonzales knew Dinwiddie was violating Welsh's rights and had a reasonable opportunity to act. Defendants' evidence suggests that Defendant Gonzales operated the handheld camera recorder during the incident. *See* Defs.' App. 79. Mere presence alone, however, cannot support a viable bystander liability claim. *Joseph ex rel. Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020). The Court must also "consider whether an officer 'acquiesced in' the alleged constitutional violation." *Id.* (quoting *Whitley*, 726 F.3d at 647). Welsh's failure to present any evidence as to this consideration, e.g., Defendant Gonzales's actual awareness of a constitutional violation occurring, dooms his claim. *See, e.g.*, *Floyd v. Logan*, No. 9:18-cv-161, 2022 WL 635430, at *5 (E.D. Tex. Feb. 7, 2022) (determining defendant was entitled to summary judgment on plaintiff's bystander liability claim, where plaintiff presented no evidence showing defendant "was aware of a constitutional violation and had an opportunity to stop it but chose not to do so"), *R. & R. adopted by* 2022 WL 627765 (E.D. Tex. Mar. 3, 2022); *Sanchez*, 569 F. Supp. 3d at 517 (holding defendants were entitled to qualified immunity on plaintiff's bystander liability claim because "[p]laintiff's verified allegations lack[ed] the factual specificity to make out a bystander–liability claim against [d]efendants"); *cf. Timpa v. Dillard*, 20 F.4th 1020, 1039 (5th Cir. 2021) (standing by and laughing as defendant "continued to kneel on an incapacitated arrestee supports an inference of 'acquiescence in the alleged use of force,' . . . preclud[ing] summary

judgment"). The undersigned therefore recommends the district judge grant summary judgment on Welsh's bystander liability claim against Defendant Gonzales.

### D. The district judge should grant summary judgment on Welsh's state law assault claim against Defendant Gonzales but should deny it as to Defendants Vanier and Hernandez.

Although Welsh has asserted claims for assault against Defendants Vanier, Hernandez, and Gonzales, the substance of his allegations shows that he intends to raise a state law battery claim. *See* Suppl. Am. Compl. 17–19; Am. Compl. 7, 56–57. "An assault occurs when a person is in apprehension of imminent bodily contact, whereas a battery is committed when an individual actually sustains a harmful or offensive contact to his or her person." *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014). "Today, the Texas Penal Code combines common-law concepts of assault and battery under its definition of 'assault.'" *Id.*; *see Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012) ("The elements of a civil assault mirror those of a criminal assault."). As a result, some Texas courts have combined "common-law concepts of assault and battery under the rubric of assault." *Gordon*, 434 S.W.3d at 589.

Under § 22.01 of the Texas Penal Code, a person commits an assault if the person:

(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or

(3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

TEX. PENAL CODE § 22.01(a). "The statute's second alternative definition mirrors the traditional notion of common-law assault, while the first and last alternatives correspond to separate forms of common-law battery." *Gordon*, 434 S.W.3d at 590.

Defendants Vanier and Hernandez argue they are entitled to summary judgment on Welsh's claim because "they did not cause any injury to Welsh," "and any behavior on [their] part was reasonable in defense of others and themselves." Defs.' Br. 13. Defendant Gonzales maintains that he is entitled to summary judgment because he "did not participate in any use of force." *Id.*

Because Welsh presents no evidence that Defendant Gonzales ever threatened or contacted him, the state law assault/battery claim should be dismissed as to Gonzales.[16] *See, e.g.*, *Onukwugha v. Univ. Health Sys.*, SA-17-CA-858-OLG (HJB), 2019 WL 13437999, at *4 (W.D. Tex. Jan. 14, 2019) (recommending grant of summary judgment on plaintiff's state law assault claim because she failed to provide evidence that defendant's "words and conduct constituted an assault"), *R. & R. adopted by* 2019 WL 13438031 (W.D. Tex. Mar. 7, 2019).

The undersigned finds, however, that Defendants Vanier and Hernandez are not entitled to summary judgment. Welsh attests that Defendant Vanier ground the handcuffs into his ring finger, after he was compliant and not resisting, causing pain and a "shallow cut." Welsh Decl. I 5. Welsh further avers that during the November UOF, Defendant Hernandez lifted Welsh's left arm over his head, pulling it out of the socket and causing severe pain.[17] Welsh Decl. II 12. The summary

---

[16] In his unverified Amended Complaint and in his Response, Welsh asserts that Gonzales "shoved" him "in the back." Am. Compl. 56; Pl.'s Resp. 20, 22. Welsh, however, presents no verified evidence as to this allegation. *See* Welsh Decl. II 9–20.

[17] In his Response, Welsh argues that Defendant Vanier ordered Welsh to be placed in handcuffs during the January UOF and that Defendant Hernandez "assisted in placing Welsh in hand restraints" during the November UOF. Pl.'s Resp. 21. Welsh did not raise these allegations in his pleadings, nor does he present verified evidence in that regard. *See* Am. Compl. 4–5 (making no contention Defendant Vanier ordered placement of restraints); 56–57 (claiming on that he "was shackled and picked up by his arms and legs" but failing to specify who "shackled" him; Suppl. Am. Compl. 7 (stating that "Welsh was placed in hand and leg restraints and carried into an isolation cell" but not attributing the action to any specific individual); Welsh Decl. I 4 (making the conclusory allegation that "Vanier did not have lawful authority to order restraints" but failing to make any *factual* allegation that Vanier gave such an order); Welsh Decl. II 9–10 (making no statement concerning who applied handcuffs). Thus, the *only* factual allegations underpinning Welsh's assault and battery claims are that (1) Defendant Vanier ground the handcuff into his ring finger, and (2) Defendant Hernandez pulled his arm out of the socket.

judgment record creates a disputed fact issue as to whether Defendants caused Welsh bodily harm and/or their actions were offensive. *See, e.g.*, *Prim v. Stein*, 6 F.4th 584, 591 (5th Cir. 2021) (reversing district court's grant of summary judgment on plaintiff's assault claim because a reasonable juror could find that defendant's shoving and grabbing of plaintiff was offensive); *Curtis v. Arapaho Venture Ltd.*, No. 3:03–CV–2099–H, 2004 WL 634865, at *6 (N.D. Tex. Feb. 20, 2004) (denying summary judgment on plaintiff's assault and battery claims, concluding there were disputed fact issues as to whether force was reasonable).

Defendants Vanier and Hernandez argue that any force on their "part was reasonable in defense of others and themselves." Defs.' Br. 13; *see* ECF No. 218, at 2. "[T]he law of self-defense is the same in both civil and criminal cases." *Gibbins v. Berlin*, 162 S.W.3d 335, 340 (Tex. App.—Fort Worth 2005, no pet.). "[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE § 9.31(a). "Unlawful" force "means criminal or tortious or both and includes what would be criminal or tortious but for a defense not amounting to justification or privilege." *Id.* § 1.07(a)(48). "The 'reasonably believes' language contains subjective and objective components." *Lozano v. State*, 636 S.W.3d 25, 32 (Tex. Crim. App. 2021). The actor "must subjectively believe that another person used or attempted to use unlawful force . . . against the [actor] and that the [actor's] use of unlawful or deadly force in response was immediately necessary." *Id.* "Second, a[n] [actor's] subjective belief must be reasonable," i.e., a belief "held by an 'ordinary and prudent man in the same circumstances as the actor.'" *Id.* (quoting TEX. PENAL CODE § 1.07(a)(42)). In the civil context, self-defense "is an affirmative defense." *Gibbins*, 162 S.W.3d at 340.

Although Welsh bears the burden of proof on his assault claims, Defendants must establish "beyond peradventure all of the essential elements of the . . . defense." *Orthoflex, Inc. v. ThermoTek, Inc.*, Nos. 3:11–CV–0870–D, 3:10–CV–2618–D, 2013 WL 4045206, at *2 (N.D. Tex. Aug. 9, 2013) (citation omitted); *see Centex Homes v. Lexington Ins. Co.*, No. 3:13-cv-719-BN, 2014 WL 2718805, at *9 (N.D. Tex. June 16, 2014) (recognizing that party asserting affirmative defense "must establish beyond peradventure *all* of the essential elements of the . . . defense to warrant judgment in his favor," and noting that such standard imposes a "heavy" burden), *vacated in part on other grounds*, 2014 WL 11515383 (N.D. Tex. Sept. 11, 2014); *Badall v. Durgapersad*, 454 S.W.3d 626, 635 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (stating that defendant "bore the burden of establishing that he acted in self-defense").[18] The summary judgment evidence does not establish that Defendants Vanier and Hernandez subjectively believed Welsh had used or attempted to use unlawful force against them. And at the very least, a fact issue remains as to whether Defendants' uses of force were justified under Texas law.

The undersigned therefore recommends the district judge deny summary judgment on Welsh's state law assault claims against Defendants Vanier and Hernandez but grant as to Defendant Gonzales.

---

[18] There is some language in Texas case law stating "that self-defense is in the nature of an inferential rebuttal issue." *Liveoak v. Ingham*, 644 S.W.2d 566, 568 (Tex. App.—El Paso 1982, writ ref'd n.r.e.). "Such issues are ones which require [defendant's] affirmative pleading and some evidence raising the particular theory which is inconsistent with the plaintiff's theory for recovery." *Id.* Then, "the burden of proof is on the plaintiff to establish the nonexistence of the rebuttal issue." *Id.*; *see Foster v. H. E. Butt Grocery Co.*, 548 S.W.2d 769, 772 (Tex. App.—San Antonio 1977, writ ref'd n.r.e.) (concluding plaintiff "failed to establish a cause of action [for assault] against the resident defendant" because he "failed to discharge his burden of establishing that [defendant] was not acting in self-defense at the time he struck [plaintiff]"). Even if self-defense constitutes an inferential rebuttal issue, Defendants have not presented "some evidence" of self-defense, meaning the burden did not shift to Welsh to show Defendants were not acting in self-defense. Thus, summary judgment is inappropriate on the issue of self-defense.

**E. Defendants Vanier, Gonzales, and Hernandez are entitled to summary judgment on Welsh's claims for IIED.**

Welsh alleges claims for IIED against Defendants Vanier, Gonzales, and Hernandez arising out of the two UOFs. Am. Compl. 5, 7, 57; Suppl. Am. Compl. 18–19; ECF No. 157, at 9. Defendants argue that Welsh cannot establish claims based on either incident because there is no evidence (1) "they acted intentionally or recklessly," (2) "that their conduct was extreme or outrageous," or (3) "that [Welsh] suffered any mental distress or that any distress was severe." Defs.' Br. 13.

To sustain a claim for IIED in Texas, a plaintiff must show: "(1) [defendants] acted intentionally or recklessly; (2) [their] conduct was extreme and outrageous; (3) [their] actions caused [plaintiff] emotional distress; and (4) the emotional distress was severe." *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). "A defendant's conduct satisfies the second element only if it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)). "[T]he fact that an action is intentional, malicious, or even criminal does not, standing alone, mean that it is extreme or outrageous for purposes of" an IIED claim. *Brewerton v. Dalrymple*, 997 S.W.2d 212, 215 (Tex. 1999).

As to the third and fourth elements, "[e]motional distress includes all highly unpleasant mental reactions such as embarrassment, fright, horror, grief, shame, humiliation, and worry." *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999). "Severe emotional distress is distress that is so severe that no reasonable person could be expected to endure it." *Id.* "Whether severe emotional distress can be found is a question of law, but whether it existed in a particular case, is a question of fact." *Bevers v. Gaylord Broad. Co.*, No. 05–01–00895–CV, 2002 WL 1582286, at

*7 (Tex. App.—Dallas July 18, 2002, pet. denied). "[I]t is the province of the court to determine whether a defendant's conduct may reasonably be regarded as extreme and outrageous enough to permit recovery." *Atkinson v. Denton Pub. Co.*, 84 F.3d 144, 151 (5th Cir. 1996).

The only evidence Welsh points to in support of his claims are his declarations. *See* Pl.'s Resp. 25–27, 30–33. Welsh avers that as to the January UOF, he experienced nightmares, anxiety, panic attacks, headaches, and depression. Welsh Decl. I 5–6. He also states that he experiences "an influx of emotions where [he] can barely control [him]self," has "difficulty doing different life activities," and lacks motivation. *Id.* at 6. He makes similar averments as to the November UOF. *See* Welsh Decl. II 17–20.

Summary judgment is appropriate on Welsh's claims for several reasons. First, Welsh is barred from recovering on the IIED claims because he alleges no facts independent of the January and November UOFs. IIED is "a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (quoting *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)); *accord Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) (IIED "is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies. Even if other remedies do not explicitly preempt the tort, their availability leaves no gap to fill." (footnote omitted)). That is, IIED "supplement[s] existing forms of recovery by providing a cause of action for egregious conduct that might otherwise go unremedied." *Zeltwanger*, 144 S.W.3d at 447 (internal quotation marks and citation omitted). Because the facts supporting Welsh's IIED claims also constitute the grounds for his § 1983 excessive force claims and his state law assault claims, and he seeks mental

36

anguish damages for those claims, there is no gap to fill. *See, e.g.*, *Bonneau v. Cuellar*, No. SA-19-CV-01471-XR, 2021 WL 4805428, at *6 (W.D. Tex. Oct. 13, 2021) (dismissing on summary judgment plaintiff's IIED claim where his "[c]omplaint set[] forth the same operative facts for his IIED claim as his constitutional claims"); *Carrazco v. Cnty. of Bexar*, No. 5:19-cv-00274-OLG, 2019 WL 13444664, at *2 (W.D. Tex. Sept. 23, 2019) (granting defendant's motion to dismiss plaintiff's IIED claim, which was based on same facts underlying his § 1983 excessive force claim); *Reed v. City of Garland*, No. 3:04-CV-2139-K, 2007 WL 9711933, at *5 (N.D. Tex. June 18, 2007) ("Because [d]efendants' alleged illegal conduct [(including excessive force)], if proven, would not go unremedied, there is no 'gap' to be filled with a claim for intentional infliction of emotional distress.").

In addition, Welsh has not shown that Defendants' use of force, in response to Welsh's repeated disregard of orders, rose to the level of outrageousness necessary to establish a claim under Texas law. Moreover, Welsh concedes that he did not seek the help of a mental health professional for his alleged extreme distress, and he does not submit any corroborating evidence, instead providing only his own declaration in support of his claims. *See* Welsh Decl. III 21–22 (explaining the reason he did not seek treatment but still acknowledging that he has never sought care); *see also* Welsh Decl. I 7 (stating after the January UOF, "[n]o one offered to have . . . [him] evaluated by a psychiatrist or psychologist"). Thus, Welsh has failed to establish at least two of the four elements necessary to succeed on his IIED claims. *See, e.g.*, *Von Beck-Lutes v. Arning*, 484 F. Supp. 2d 585, 588 (W.D. Tex. 2007) (dismissing plaintiff's IIED claim based on defendants' purported assault of plaintiff at his wife's funeral, concluding such conduct "could not cause emotional suffering" severe enough to state a claim); *Dudik v. Mesquite Rodeo*, No. 3:03–CV–0178–M, 2004 WL 524947, at *4 (N.D. Tex. Mar. 12, 2004) (concluding defendants were

entitled to summary judgment on plaintiff's IIED claim in part because plaintiff "never sought medical treatment as a result of any alleged emotional injuries she sustained"); *Lewis v. Cont'l Airlines, Inc.*, 80 F. Supp. 2d 686, 705 (determining that plaintiff's emotional distress did not support IIED claim, where plaintiff "offer[ed] no evidence . . . to corroborate his deposition testimony" and "proffered no medical records in support of his claims or any affidavits from physicians, psychiatrists, or psychologists").

The undersigned therefore recommends the district judge grant summary judgment on Welsh's IIED claims against Defendants Vanier, Gonzales, and Hernandez.

### F. Welsh has not established a state law false arrest claim against Defendant Vanier.

Welsh contends that Defendant Vanier falsely arrested him by wrongfully placing him in the SMU. *See* Suppl. Am. Compl. 19 ¶ 84; Am. Compl. 4–5, 7. Defendant Vanier argues that Welsh's placement in SMU did not constitute an arrest, and in any event, Vanier "had cause to discipline" Welsh based on his refusal to comply with orders and the fact that he bit Captain Salazar during the January UOF incident. Defs.' Br. 14. Welsh denies that Defendant Vanier had lawful authority to place him in the SMU. Pl.'s Resp. 24.

To state a claim for false arrest under Texas state law, a plaintiff must demonstrate the following: "(1) willful detention; (2) without consent; and (3) without authority of law." *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985) (per curiam). "The plaintiff must prove the absence of authority in order to establish the third element of a false imprisonment cause of action." *Id.* at 376.

Welsh's claim fails on the first element. Welsh is confined at the TCCC pursuant to a valid order of civil commitment. Because Welsh was already lawfully confined, Defendant Vanier could not have subjected him to an unlawful detention. Instead, what Welsh challenges is a change

to his custodial level or the conditions of his confinement, which does not amount to an unlawful arrest. *Cf. Hicks v. Bd. of Cnty. Comm'rs of Cnty. of Otero*, No. 18-850 DHU/JFR, 2023 WL 6927369, at \*9 (D.N.M. Oct. 13, 2023) (recommending summary judgment on plaintiff's New Mexico state law claim of false imprisonment, where "[p]laintiff d[id] not dispute that he was lawfully in the custody of [the detention center]"); *Kornegey v. City of Philadelphia*, 299 F. Supp. 3d 675, 682 (E.D. Pa. 2018) (finding no "cases in which a prisoner who was lawfully incarcerated was permitted to proceed with a false imprisonment claim under Pennsylvania law," which requires that "the detention [be] unlawful," based on plaintiff's placement in solitary confinement); *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that the Due Process Clause is only implicated when restrictions that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). The undersigned therefore recommends the district judge grant summary judgment on this claim.

### G. The district judge should grant summary judgment on Welsh's negligence claim against Defendant Vanier.

Welsh asserts that Defendant Vanier was negligent during the January UOF incident. *See* Suppl. Am. Compl. 19; Am. Compl. 4–5. Welsh's negligence claim against Vanier is based on the purported use of force and placement in SMU. *See* Am. Compl. 5. Defendant Vanier maintains that Welsh "has not clearly articulated any legal duty of Vanier regarding [Welsh's] placement in SMU and use of force and has no evidence of any breach of any duty to [Welsh]." Defs.' Br. 15.

"Negligence actions in Texas require 'a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach.'" *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) (citation omitted); *accord Espinoza v. Cargill Meat Sols. Corp.*, 622 F.3d 432, 443 (5th Cir. 2010) ("Texas state law claims for negligence . . . require[e] a[n] assessment of (1) [defendant's] legal duty, (2) whether [defendant] breached that duty, and

(3) whether damages were proximately caused by that breach."). "Proximate cause requires both cause in fact and foreseeability." *D. Hous., Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). "Foreseeability exists when 'the actor as a person of ordinary intelligence should have anticipated the dangers his negligent act creates for others.'" *Id.* (citation omitted).

Initially, the undersigned observes that Welsh's negligence claim hinges on the same facts as his excessive use of force, assault, and false arrest claims. That is, Welsh contends that Defendant Vanier engaged in intentional acts, which caused him harm. Am. Compl. 5, 7; *see Gavrel v. Lieberman*, No. 2-08-414-CV, 2010 WL 1270334, at *2 (Tex. App.—Fort Worth Apr. 1, 2010, no pet.) ("An assault is an intentional tort; it occurs when a person intentionally, knowingly, or recklessly causes bodily injury to another."). There is a "fundamental difference between negligent injury, or even grossly negligent injury, and intentional injury," i.e., "the specific intent to inflict injury." *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985). "The Restatement Second of Torts defines intent to mean that 'the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.'" *Id.* (citation omitted).

Because Welsh's claims and evidence allege willful acts, Welsh cannot recover on a negligence theory.[19] *See, e.g.*, *Gavrel*, 2010 WL 1270334, at *2 ("[A] plaintiff may not recover in negligence when he proves only an intentional tort. That is, a plaintiff may not recast an intentional tort as mere negligence." (citations omitted)); *D.B. ex rel. Becton v. City of McKinney*, No. 4:16-CV-965-ALM-KPJ, 2017 WL 6820192, at *3 (E.D. Tex. Dec. 15, 2017) (finding, "as a matter of

---

[19] That is, Welsh's pleadings and evidence make clear that he is contending Defendant Vanier engaged in an *intentional* act. *See* Am. Compl. 5 ("Captain Vanier while taking of[f] the shackles, used the metal jagged edge . . . of the handcuff as a weapon against" Welsh. "Captain Vanier did grind the teeth of the cuff into [Welsh's] . . . right ring finger."); Welsh Decl. I ¶ 55 ("At that point [Vanier] took the other side of the cuffs, metal teeth and grinded it into my right ring figure of the hand he just freed [sic all].").

law," that plaintiffs failed to state viable negligence claim, where their claim arose "from their allegations that [defendant] committed the intentional torts of assault and battery, false imprisonment, and IIED, which are intentional torts under Texas law"), *R. & R. adopted by* 2018 WL 324438 (E.D. Tex. Jan. 8, 2018); *Carlson v. TransUnion, LLC*, 261 F. Supp. 2d 663, 665 (N.D. Tex. 2003) ("There is no cause of action under Texas law for negligence where the offending action was taken with intent to injure."); *Fulmer v. Rider*, 635 S.W.2d 875, 879 (Tex. App.—Tyler, writ ref'd n.r.e.) ("[Defendant's] shooting of appellees was shown by all the evidence to be a willful and intentional act, and th[us] appellees [were] not entitled to recover upon negligence, even though negligence was pled and submitted to the jury."). For this reason alone, Defendant Vanier is entitled to summary judgment.

Nor has Welsh provided sufficient evidence showing that Defendant Vanier owed Welsh a legal duty. "To determine whether a defendant is under a legal duty, Texas courts consider several interrelated factors, including the risk, foreseeability, and likelihood of injury, weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Alcoa, Inc. v. Behringer*, 235 S.W.3d 456, 460 (Tex. App.—Dallas 2007, pet. denied). "The existence of a duty is a question of law." *Escoto*, 288 S.W.3d at 404.

Welsh points only to a contract between CCRS and the Texas Civil Commitment Office (TCCO) in support of his claim. *See* Pl.'s Resp. 27–30; Pl.'s App. 26–112 (highlighting only the "Use of Force" subsection on page 69, which provides that CCRS "shall ensure that there are written policies" regarding uses of force and that hand restraints should be applied "by an individual who is properly trained in the use of such devices and only in an emergency situation for self-protection[ or] protection of others"). Welsh argues that the contract "created [a] 'Special

41

Relationship'" between him and CCRS/TCCO and that "the ordinary care provision controls." Resp. 28–29. This contract, standing alone, is not sufficient to demonstrate Defendant Vanier owed Welsh a legal duty. *See Gonerway v. Corr. Corp. of Am.*, 442 S.W.3d 443, 448 (Tex. App.— Dallas 2013, no pet.) (affirming trial court's grant of summary judgment on plaintiff's negligence claim, where contract did "no more than create a mere surmise or suspicion that [defendant] had a duty to provide medical care to [plaintiff] as an inmate"). Because Welsh has not supplied sufficient evidence establishing that Defendant Vanier owed him a legal duty, summary judgment is also appropriate on this basis. *See, e.g.*, *Rowland v. Sw. Corr., LLC*, No. 4:20-CV-00847-ALM-CAN, 2021 WL 4206409, at \*13 (E.D. Tex. Aug. 17, 2021) (granting defendants' motion to dismiss on plaintiff's negligence claim in part because "[t]he [c]ourt [wa]s unable to discern the specific duties owed"), *R. & R. adopted by* 2021 WL 4191433 (E.D. Tex. Sept. 15, 2021); *see also Aguilar v. United States*, No. 1:16-cv-048, 2017 WL 6034652, at \*3 (S.D. Tex. June 7, 2017) (explaining within context of a negligence claim for mental anguish absent physical injury, that "neither the Texas Supreme Court nor Texas Legislature have ruled that a 'special relationship' exists between inmates and guards, which would allow mental anguish negligence claims to be initiated by inmates against their respective guards").

In sum, the undersigned recommends the district court grant summary judgment on Welsh's state law negligence claim against Defendant Vanier.

## V.   **Recommendation**

For these reasons, the undersigned **RECOMMENDS** that the United States District Judge **GRANT** summary judgment on Welsh's claims for (1) § 1983 excessive force against Defendants Gonzales and Hernandez, (2) § 1983 bystander liability against Defendant Gonzales, (3) state law assault against Defendant Gonzales, (4) state law IIED against Defendants Vanier, Gonzales, and

Hernandez, (5) state law false arrest against Defendant Vanier, and (6) state law negligence against

Defendant Vanier. ECF No. 255. The undersigned further recommends the district judge **DENY**

summary judgment on Welsh's claims for (1) § 1983 excessive force against Defendants Vanier

and Dinwiddie, and (2) state law assault against Defendants Vanier and Hernandez. In addition,

the undersigned recommends the district judge (1) **OVERRULE** Welsh's evidentiary objections,

(2) **OVERRULE as moot** Defendants' evidentiary objections based on hearsay, lack of personal

knowledge, and conclusory assertions, and (3) **OVERRULE** Defendants' generalized evidentiary

objections to purported contradictory statements.

## VI.    Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner

provided by law. Any party who objects to any part of this Report and Recommendation must file

specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C.

§ 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding

or recommendation to which the objection is made, state the basis for the objection, and specify

the place in the magistrate judge's Report and Recommendation where the disputed determination

is found. An objection that merely incorporates by reference or refers to the briefing before the

magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved

party from appealing the factual findings and legal conclusions of the magistrate judge that

are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v.*

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: December 27, 2023.

_____

**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**

43